RICHARD JARRETT et al., Appellants, v VINCENT MADIFARI, Respondent.

First Department, April 19, 1979

398

## APPEARANCES OF COUNSEL

*Herbert M. Horowitz* of counsel *(David Jaroslawicz* and *Gustav G. Rosenberg* with him on the brief; *Lawrence M. Rosenberg* and *Herbert M. Horowitz,* attorneys), for appellants.

*Leo Eckman* of counsel *(Greengold & Eckman,* attorneys), for respondent.

## OPINION OF THE COURT

LUPIANO, J.

After a nonjury trial in this negligence action, judgment was awarded the defendant dismissing the complaint. Plaintiff, Richard Jarrett, was a passenger in a vehicle driven by Kenneth Dell. Mrs. Dell and her son were fellow passengers. At approximately 11:00 A.M., on September 4, 1972, while traveling south on the New York State Thruway, the Dell vehicle had a flat. Mr. Dell drove the vehicle onto the left divider, whereupon Mrs. Dell and said plaintiff exited and crossed the three southbound lanes of the Thruway to the west shoulder in order to locate and borrow, if possible, a jack, as the jack in the Dell vehicle was not serviceable. After borrowing a jack from an individual at the golf course located in that area, the couple returned. Mrs. Dell preceded the plaintiff Richard Jarrett to the disabled vehicle. Plaintiff following, carried the large part of the jack on his left shoulder and the base in his right hand. It was a clear day. Plaintiff Richard Jarrett testified (in some detail at the examination before trial and in reduced detail at trial) that before he started to cross the three southbound lanes of the Thruway in order to reach the Dell vehicle, he looked to his left to see if there was any southbound traffic and observed two vehicles approximately 500 yards (1,500 feet) away (traveling south-

bound).[1] Plaintiff started across, and reiterated that the last thing he remembered prior to the accident was looking "to my left." The next thing he recalled was a doctor talking to him at a hospital approximately three months later. Mr. Dell testified that from his vantage point he observed the southbound traffic at the time and saw three vehicles approximately 1,000 feet away. He saw two of the vehicles slow down, but the defendant's car in the left lane—the one nearest the divider upon which the Dell vehicle was parked—never slowed down. Defendant's car passed the decelerating vehicles, swerved to the right, with the consequence that a portion of said vehicle was in the center lane—the point to which the plaintiff had progressed in an endeavor to reach the Dell car. Mr. Dell did not see the actual impact, but heard the crash and then saw plaintiff fall to the ground.

Defendant's vehicle, while being operated at the time by defendant, contained as passenger, defendant's wife. Defendant called no witnesses at trial and relied on reading portions of his deposition to round out those parts of said deposition which had been read to the court by plaintiff.

Defendant's testimony, as gleaned from his deposition, was that he was proceeding in the left lane (the speed lane) at about 45 to 50 miles per hour and was able to see approximately 500 feet in front.[2] He saw no one on the Thruway until he came in proximity to the parked Dell vehicle, when he observed Mr. Dell, sitting in front of the parked car on the rail in the center divider. Defendant described the traffic as heavy and admitted there were vehicles in both lanes to the right of him. He did not observe anyone crossing the highway before the accident. Only 100 feet after seeing Mr. Dell, defendant felt an impact.[3] The impact was described as occurring when the jack hit defendant's windshield. Defendant stated: "While I was driving south and *I had my eyes straight ahead,* there was a car parked to the left of me, I moved slightly over to the right, there was a car in front of me in the

---

1. Though it is true that plaintiff during the course of his deposition (read at trial and utilized in cross-examination) testified at one point that the closest vehicles were approximately 500 feet away, plaintiff subsequently corrected himself (500 yards) and further reference to the 500 feet was borne out of defense counsel's persistent utilization of the slip of plaintiff's tongue.

2. Defendant stated that he believed the speed limit at this time and place to be 60 miles an hour.

3. Accepting defendant's testimony as to his rate of speed, transcribing the distance into a measurement of time, the impact occurred some two seconds later.

right lane and there was a car in the right lane behind me" (emphasis supplied). He declared that he did not see anyone carrying a jack prior to the impact and did not slow down from his avowed 50 mile an hour pace until after the impact.

Plaintiffs introduced into evidence a certified copy of defendant's MV-104 report which states in pertinent part: "Driving southbound on N.Y. State Thruway in passing left lane man with jack in hand running into Thruway from right hand lane hits the right hand side of windshield with jack."

The severe injuries sustained by plaintiff Richard Jarrett include brain damage, amnesia, loss of the use of the left arm and an inability to resume work because of the memory impairment.

In awarding defendant judgment, the trial court found that plaintiffs had failed to prove negligence on the part of the defendant and plaintiff Richard Jarrett's own freedom from contributory negligence. It observed that "[i]t is impossible to determine from this record *precisely* how the accident happened or who was at fault * * * At best, the evidence is evenly balanced" (emphasis supplied). We do not agree with the trial court's view of the record.

■ On this record it is patent that plaintiffs made out a prima facie case. In reaching this conclusion, we employ reason and common sense, sure guides in the ascertainment of truth and the dispensation of justice. Parenthetically, any advantage otherwise afforded the trier of the facts in actually observing the witnesses and parties testify—an advantage not given an appellate court by the lifeless printed pages of a record—is diluted to a considerable extent in this matter, because the defendant called no witnesses and relied on simply reading portions of his deposition. Regarding freedom from contributory negligence, plaintiff Richard Jarrett stated that he looked before traversing the Thruway to see if it was safe to cross and determined to do so, the closest vehicle being 500 yards away. The reason attributed by plaintiff to the precautionary act engaged in was simply: "I wouldn't go into cars; I wasn't ready to die."[4]

It is unequivocally demonstrated on this record that the defendant's vehicle did not slow down before the impact,

4. Assuming defendant's version as set forth in his MV-104 is correct, then plaintiff, it might also be reasonably assumed, was indeed ready to die by "running" across the Thruway in the presence of imminent oncoming traffic.

despite the fact that defendant had observed the Dell vehicle protruding onto the Thruway and the fact that two of the vehicles to defendant's right had slowed down. A reasonable man would be put on notice that something was wrong and would have employed similar cautionary tactics. Instead, the evidence points merely to a veering by the defendant to the right to avoid the Dell automobile, which swerve into part of the middle lane resulted in defendant's vehicle striking plaintiff.

The problem lies in the defendant's versions of the incident —that embodied in the MV-104 and that given at the examination before trial and submitted to the trial court—which versions raise a clash of probabilities. If credence is given the defendant's MV-104, then it appears that defendant had, in fact, seen plaintiff before the impact. While the words delineated in the MV-104 do not specifically state that defendant saw the plaintiff Richard Jarrett before the impact, the clear connotation is that defendant did see him before the impact. Yet defendant's testimony at the examination before trial differs. To reiterate, in his deposition, defendant declares that he was traveling at 45 to 50 miles per hour, in heavy traffic, on the Thruway in the left lane (the so-called "speed lane"), that he was operating under the apprehension that the legal speed limit was 60 miles per hour, and that he was looking straight ahead. Again, common sense probabilities arise. Looking straight ahead, defendant supports his assertion in this context that he did not see the plaintiff. Aside from the clash of the two versions in this respect, defendant's overtaking of the vehicles to his right and his admission of not slowing down until after the impact, raises the spectre either that he was traveling in such manner as to overtake those other vehicles, or that those vehicles were slowing down. Again, if the vehicles were slowing down, then this circumstance, coupled with the position of the Dell vehicle, would put an alert driver on notice that something was wrong. Of course, if defendant was fixed in his concentration as to matters occurring straight ahead, then awareness or appreciation of events not occurring within the immediate field of attention would be lessened.

"In this nonjury case, it is within the province of this court to grant the judgment which, upon the evidence should have been granted by the trial court * * * We are not required to give credence to testimony so inherently improbable that we

are morally certain it is not true" *(De Mayo v Yates Realty Corp.,* 35 AD2d 700, 701).

Common sense dictates that the plaintiffs' case is more credible, since virtually only one bent on suicide would attempt to cross the Thruway, in heavy traffic, with cars immediately on top of him. The natural inferences that can be drawn from the record are that the plaintiff attempted to cross during a break in traffic, and that though two vehicles slowed down because they observed the plaintiff crossing, the defendant nonetheless passed the slowing vehicles, swerved to the right to avoid the protruding Dell vehicle and saw the plaintiff at the last moment, striking him while in the center lane.

■ A plaintiff found to be an amnesiac, having made a showing of negligence and freedom from contributory negligence, however slight—a showing of facts from which negligence may be inferred—is entitled to application of the rule providing when a plaintiff may prevail on a lesser degree of proof *(Schechter v Klanfer,* 28 NY2d 228, 233; see *Wank v Ambrosino,* 307 NY 321; see, also, *Noseworthy v City of New York,* 298 NY 76). Of course, New York has now adopted the doctrine of pure comparative negligence (CPLR 1411). However, on this record it is clear that plaintiff Richard Jarrett, although he apparently suffers from a memory defect, is not entitled to application of this rule. Patently, said plaintiff testified in some detail at an examination before trial as to the occurrence and in much less detail at the trial. His answers, embodied in his deposition, were read at trial. Thus, in large measure, plaintiff was able to give to the trial court his version of the occurrence. It is only where the memory loss has effectively prevented a plaintiff from describing the occurrence that invocation of the rule of *Schechter v Klanfer* is warranted. Whether that description proceeds by way of trial testimony or testimony at an examination before trial is irrelevant. Obviously, there are many degrees and types of amnesia—and circumstances may demonstrate unusual situations where a memory loss might be total or selective; intermittent or progressively deteriorating. We merely note that on this record plaintiff gave a sufficient description of the occurrence to make application of a lesser degree of proof improper.

The trial court never properly considered this issue. It stated that even *assuming* plaintiff Richard Jarrett to be an amnesiac, it would not apply the *Schechter* rule in view of

plaintiffs' failure to make out a prima facie case. The critical distinction between a negligence action involving a plaintiff who can testify to the occurrence and one involving a plaintiff who cannot (e.g., wrongful death, amnesia, etc.) is that the degree of proof required to make out a prima facie case is less in the latter. However, "the rule does not eliminate altogether the need to prove defendant's negligence; there must be some showing of negligence, however slight, or some facts from which negligence can be inferred, before the rule that a plaintiff in a death action [or an amnesiac] is not held to as high a degree of proof as is an injured plaintiff can be brought into play. Pure conjecture alone does not justify a finding of negligence in a death action and is insufficient to sustain a judgment. Thus, even under the relaxed rules of evidence in death cases, the minimum requirement is the establishment of the cause of death" (67 NY Jur, Wrongful Death, § 249). "In death cases, plaintiffs are not held to as high a degree of proof of the cause of action as where an injured party can himself describe the occurrence. The plaintiff is entitled to go to the jury if there is any possible hypothesis on the evidence negating fault of the decedent and permitting an imputation of negligence to the defendant. The rule is applied without regard to whether there were eyewitnesses to the occurrence or not" (67 NY Jur, Wrongful Death, § 248).

■ ■ Plaintiff Richard Jarrett offered direct proof in his testimony as to his freedom from contributory negligence. The uncontradicted testimony set forth in this record, viewed in conjunction with the inconsistencies implicit in defendant's versions of the accident, remove this matter from the realm of pure conjecture. In a civil suit, the party having the burden of persuasion must establish the propositions essential to his cause by a preponderance of the evidence.

"Properly interpreted * * * the preponderance rule means that the evidence must be of such weight as to produce a reasonable belief in the truth of the facts asserted" (Fisch, New York Evidence [2d ed], § 1090). "[T]he burden of persuasion requires that 'the inferences of negligence and proximate cause must be the only ones that can fairly and reasonably be deduced from the facts. It is not necessary to exclude every other possible hypothesis, but every other reasonable hypothesis' " (Fisch, supra, § 1092).

Relevant to this observation is the approach utilized by the trial court in concluding that "[i]t is impossible to determine

from this record *precisely* how the accident happened or who was at fault and to what extent that fault was the proximate cause of this accident" (emphasis supplied). The law is clear that the plaintiff need not show the exact manner in which the accident took place (see *Rosenberg v Schwartz,* 260 NY 162, 166).[5] Patently, as noted above, it is not requisite for plaintiff to demonstrate precisely how the accident happened; rather, plaintiff is required to show with *reasonable certainty* that the injury resulted from the act of the defendant and without contributory negligence on plaintiff's part (see *Boyce Motor Lines v State of New York,* 280 App Div 693, 696, affd 306 NY 801).

■■ Finally, it appears that plaintiffs could adopt the "last clear chance" doctrine. Simply phrased, without refinement, that doctrine permits a plaintiff in a negligence action to recover, notwithstanding his own negligence, upon a showing that the defendant had the last clear chance to avoid the accident. Assuming plaintiff Richard Jarrett was negligent in crossing the Thruway, the defendant admittedly was able to see for some 500 feet in front of him. From defendant's MV-104 it would appear that defendant observed the plaintiff traversing the Thruway before the impact. Further, it appears that plaintiff had observed the Dell vehicle and should have seen (if he did not, in fact, see) the slowing vehicles to his right. Defendant, therefore, should have had a clear opportunity to avoid any accident by slowing down, but he failed to take the needed precaution (see *Kunze v Pictorial Review Co.,* 246 NY 600). "The doctrine of last clear chance is predicated upon the knowledge of the plaintiff's peril being brought home as an actual fact to the person charged with the subsequent negligence, and may not rest upon a breach of duty to discover it. * * * It is what the defendant did or failed to do *after acquiring knowledge* of the peril that constitutes the breach of duty. *Knowledge may be established by circumstantial evidence* even in the face of professions of ignorance, but knowledge, or negligence so reckless as to betoken indifference to knowledge, is necessary. Professed ignorance of the danger alone is not as a matter of law a defense *if the circumstantial*

---

5. See New York Pattern Jury Instructions (PJI 1:60) which defines burden of proof as follows: "The law requires that, in order for a party to prevail on an issue on which he has the burden of proof, the evidence that supports his claim on that issue must appeal to you as more nearly representing what took place than that opposed to his claim."

*evidence might show that defendant in fact had the requisite knowledge* upon which a reasonably prudent man would act" (41 NY Jur, Negligence, § 75; emphasis supplied; see *Chadwick v City of New York,* 301 NY 176, 180-181). The evidence adduced at the trial herein highlighted by the inconsistency in defendant's versions of the incident set forth circumstances which might demonstrate that defendant in fact had knowledge of the plaintiff's peril. Further, the circumstances might demonstrate that plaintiff was contributorily negligent in embarking upon his traversal of the southbound lanes of the Thruway, but that, while actually engaged in such traversal, he looked to his left and thereby engaged in the requisite cautionary act which brought his prior act of negligence in failing to look to a halt. Note is taken of plaintiff's testimony that he looked to his left before entry upon the Thruway, but that he also looked to his left while actually crossing, and the last thing he remembered before the impact was looking to his left.

"The last clear chance doctrine applies only where there is a time sequence, an interval in which plaintiff's act of negligence is complete and in which the defendant has an opportunity to avert the disaster" (41 NY Jur, Negligence, § 73). Suffice it to say that the issue of last clear chance is properly submissible to the finder of fact on this record and that, assuming plaintiff was contributorily negligent, we would determine to resolve such issue in plaintiffs' favor (cf. *Dominguez v Manhattan & Bronx Surface Tr. Operating Auth.,* 46 NY2d 528).

The foregoing analysis, *in toto,* must be viewed against the following circumstances which occurred toward the end of the trial herein. At the conclusion of plaintiffs' case, their counsel read into evidence certain portions from the examination before trial of the defendant, and at the conclusion declared, "That's all I have, your Honor." Defendant's counsel then chose to put in what turned out to be his case by reading into evidence the remainder of defendant's testimony at the examination before trial. In proceeding to do so, defense counsel answered the court's inquiry as to whether he was going to offer further proof "other than the fact he's [defendant] going to testify when he takes the stand" with the statement—"I may not put him [defendant] on the stand * * * this examination before trial * * * was very thorough". At the conclusion of defendant's submission of the remainder of

his e b. t. transcript, plaintiff formally rested. Defendant moved to dismiss the complaint for failure to prove a prima facie case and the court having reserved decision, defendant rested, choosing not to call any witnesses. This trial tactic caught plaintiffs' counsel by surprise, and he requested leave to reopen his case, "in the interest of justice," observing: "His [defense counsel's] witnesses are still here. The police officer is here; *his clients* are here" (emphasis supplied). The sole purpose for this request, expressed to the trial court sitting as both finder of law and of fact, was to offer defendant's MV-104 report into evidence. Defense counsel objected, acknowledging, in effect, that the purpose was to hurt defendant's credibility —"I know what the purpose is. He hopes to show because my man is saying here the man is crossing the roadway that means he's crossing the roadway." The court overruled defense counsel's objection and accepted the MV-104 in evidence and extended to defendant the opportunity to reopen his case, which defense counsel, aware of the implications inherent in the fact that two versions by defendant of the incident were not before the court, declined.

■■ "The sound rule is that where an adversary withholds evidence in his possession or control that would be likely to support his version of the case for which support is needed, the strongest inferences may be drawn against him which the opposing evidence in the record permits" (21 NY Jur, Evidence, § 126). Defendant's wife was a passenger, sitting in the front of defendant's car at the time of the accident, and was present at the trial. She was not called by defendant as a witness.

■ "The rule with respect to the drawing of an unfavorable inference from the failure to call a witness applies only to a person whom the party would naturally be expected to call, not to one known to be biased against or hostile to the party, or to a stranger to the party" (21 NY Jur, Evidence, § 127). As noted in *Reehil v Frass* (129 App Div 563, 565, revd on other grounds 197 NY 64): "The rule in respect of failure of a party to produce oral evidence is that such failure is a fact to be considered in determining how much weight, if any, should be given to the evidence which he has produced * * * The question is one of inference for the jury—or for the trial Judge, if there be no jury; *i.e.,* it is not an inference or presumption of law, but one of fact".

Patently, the defendant's wife's testimony would be impor-

tant and not merely trivial or cumulative and her goodwill toward the defendant may be inferred.

■■ It is well recognized that the finder of fact may not speculate as to what the witness would testify to had he or she been called. The rule is that the finder of fact "may construe the evidence *already in the case* most strongly against the party who might have called the witness to contradict or explain that evidence" (Richardson, Evidence [10th ed], § 92; emphasis added). As stated by the Court of Appeals: "where an adversary withholds evidence in his possession or control that would be likely to support his version of the case, the strongest inferences may be drawn against him which the opposing evidence in the record permits *(Perlman v Shanck,* 192 App. Div. 179; *Milio v. Railway Motor Trucking Co.,* 257 App. Div. 640; *Borman v. Henry Phipps Estates,* 260 App. Div. 657)" *(Noce v Kaufman,* 2 NY2d 347, 353).

■ Under the circumstances herein, defendant in effect rested upon plaintiffs' proofs at trial. Despite the inferences which naturally arose from the inconsistency in defendant's testimony at the examination before trial and his statement in the MV-104, defendant chose not to avail himself of the opportunity of advancing evidence in his possession and control by either testifying himself or calling his wife as a witness. The rule cited in *Noce v Kaufman (supra)* is clearly applicable. Indeed, the record herein demonstrates the propriety of applying the adverse inference rule against the defendant herein.

"The failure of a party to a civil action to testify as to matters upon which he is or should be informed permits every inference warranted by the evidence introduced to be indulged against him" (21 NY Jur, Evidence, § 125; see, also, *Wolf v Gold,* 18 AD2d 987, 989).

Thus we conclude that plaintiffs, in making out their prima facie case on liability, carried their burden of proof by a preponderance of the evidence.

The following observations are made regarding the dissent. First, it appears that the dissent views plaintiff's claim of amnesia as a static condition of almost total loss of memory regarding the accident (note the dissent's use of the words "one * * * fortuitous recollection" being summoned up by plaintiff). This is simply not the case, and we have clearly held that this matter does not warrant application of the *Schechter v Klanfer* rule. To reiterate, amnesia may involve memory

loss which is partial, as compared with total, and is not of necessity a static condition. Of course, there were three cars proceeding south on the Thruway prior to the accident. It does not necessarily follow, as the dissent implies, that the plaintiff was negligent in observing only two. Einstein's theory of relativity in its cogent simplicity declares that phenomena are judged from the point of view of the observer and thus their evaluation and reality are relative to that observer. It does not strain credulity to envision circumstances in which the third car was shielded from plaintiff's view by one of the other two cars because of the relative position and speed of these vehicles at the time of plaintiff's observation. Aside from the dissent's employment of the literary device of interchanging the term "vision" of the accident with "version" of the accident respecting defendant's MV-104, the fact remains that the MV-104 does ask for a description of the accident *and* its apparent causes. Defendant may be held to his version, or, as the dissent wills, his vision of the accident. Most conspicuous by its absence is any acknowledgment by the dissent of the evidentiary implications of defendant's failure to testify or to call his wife to testify at trial. The accident occurred on a clear day, at a place unobstructed by terrain or bends in the thoroughfare. Obviously, the few seconds before an impact most often do not afford adequate time to avoid the accident. However, in the instant matter it serves to merely reiterate that on this record we may conclude that defendant observed the plaintiff before the impact and, most importantly, that defendant had observed the disabled Dell vehicle and should have seen (if he did not, in fact, see) the slowing vehicles to his right. Also, while plaintiff's statement at his examination before trial that he looked a second time to his left just prior to the impact was not testimony at the trial, it was evidence at the trial because this statement was read into the record by plaintiff's counsel at trial.

Accordingly, the judgment of the Supreme Court, Bronx County (COTTON, J.), entered September 20, 1977, dismissing plaintiffs' complaint and granting judgment to the defendant, should be reversed, on the law and the facts, with costs and disbursements, judgment granted plaintiffs on the issue of liability, and the matter remanded for an assessment of damages.

LYNCH, J. (dissenting). Despite his claim of amnesia, the plaintiff at the trial was able to summon up one recollection

directly involved with the happening of this accident. He remembered that just before starting across the highway he looked and saw two cars coming from 500 yards away.* This fortuitous recollection has now become crucial because the majority has held that by recalling this the plaintiff has met his burden of proving his freedom from contributory negligence. We respectfully disagree.

A plaintiff traversing a highway at a place where there is no assigned crossing is not by that fact precluded from recovery *(Uralsky v Gribbon,* 242 App Div 533) but may be charged with added vigilance *(Baker v Close,* 204 NY 92, 95). By statute, one crossing a highway other than at a regular crossing must "yield the right of way to all vehicles upon the roadway" (Vehicle and Traffic Law, § 1152, subd [a]). To sustain his burden of proof this plaintiff had to persuade the trier of the facts that there was no necessity to yield way to any vehicles, that a reasonably prudent pedestrian under the same conditions would have been able to have crossed this highway free of danger from vehicular traffic. This would necessitate the trier of the facts weighing not just a single recollection of the plaintiff but all of the circumstances disclosed by the proof: the position of the parties, the course and distance each would have to travel, the speeds of travel, the visibility for each. All of this would go into a determination whether, if each party persisted in his course, the plaintiff would be in danger in crossing the highway or free of danger *(Shuman v Hall,* 246 NY 51; *Chandler v Keene,* 5 AD2d 42; 4A NY Jur, Automobiles and Other Vehicles, § 784). More is required for exculpation from contributory negligence than a recitation by a plaintiff that he looked and it appeared to be safe (see, e.g., *O'Reilly v Davis,* 136 App Div 386).

There is little dispute about the factual circumstances of this accident. The plaintiff left a position of safety at the edge of the Thruway to return to a disabled car across three southbound lanes of traffic. He was carrying the base of an automobile jack in his right hand and its long handle over his left shoulder. He said that when he started across he looked to his left and saw two cars approaching from 500 yards away.

* A statement in the majority opinion that the plaintiff looked a second time refers to his saying that he looked again just prior to the impact. But this was not testimony at the trial. It was at the examination before trial when the plaintiff could remember looking again but could not remember seeing anything. At the trial he could not remember either these questions or answers.

Inescapably, there were at least three cars, there was at least one in each traffic lane and the cars in first and second lane must have been almost on top of the plaintiff because it is undisputed that they were only 50 to 60 feet away from the disabled car when they began decelerating. As the defendant, in the third lane, approached the scene he was farther north than the car in the second lane. When the car in the second lane slowed down, the defendant overtook it and, at the same time in recognition of the disabled car parked immediately ahead of him on his left, he moved his car slightly to his right. A metallic object (the jack handle?) hit his windshield on the right side. He stopped his car within 100 feet. The plaintiff's body was lying in the second lane almost at the line separating it from the third lane.

To us these facts bespeak the plaintiff's contributory negligence. They are not significantly different from those of *Casey v Ross* (10 NY2d 834). There the car in the first driving lane was parked and the plaintiff walked in front of it. A car in the second driving lane stopped suddenly and its driver motioned the plaintiff across in front of him. She went across and was hit by a passing car in the third driving lane. The Court of Appeals held her contributorily negligent as a matter of law. The facts here justify the trial court's holding that the plaintiff had failed to establish his freedom from contributory negligence.

The majority would hold the defendant liable, despite the plaintiff's negligence, through the last clear chance doctrine using a very shaky hypothesis: "The evidence adduced at the trial herein highlighted by the inconsistency in defendant's versions of the incident set forth circumstances which might demonstrate that defendant in fact had knowledge of the plaintiff's peril." To find the inconsistency the majority has strained at a gnat. It has gone to the defendant's MV-104 and its usual question asking for the description of the accident and its apparent causes and interpreted this as though it asked for the defendant's vision of the accident and not his version of it.

We find no inconsistency. We find no evidence that would indicate that the defendant knew of the presence of the plaintiff and we find the reason in the record why he should not have known. The defendant's view of the plaintiff would have been blocked by the car ahead in the second lane and on overtaking that car his attention was momentarily diverted by

the parked car immediately ahead to his left. Furthermore it is basic to the last clear chance doctrine that the defendant not only have knowledge of the plaintiff's peril but also have an opportunity to do something about it. It is not shown to our satisfaction that, had the defendant known of the plaintiff's presence, he could have taken any helpful action in the split seconds involved.

We would affirm.

BIRNS, J. P., and FEIN, J., concur with LUPIANO, J.; SULLIVAN and LYNCH, JJ., dissent in an opinion by LYNCH, J.

Judgment, Supreme Court, Bronx County, entered on September 20, 1977, reversed, on the law and the facts, and vacated, judgment granted plaintiffs on the issue of liability, and the matter remanded for an assessment. Appellants shall recover of respondent $75 costs and disbursements of this appeal.