(November 9, 2010)

■ CLAUDE WILLIAMS, Respondent, v CINDY HOOPER et al., Appellants. [911 NYS2d 13]—

Judgment, Supreme Court, New York County (Judith J. Gishe, J.), entered April 27, 2009, after a jury trial, awarding plaintiff $1.8 million for past and future pain and suffering, reversed, on the law, without costs, the judgment vacated and the matter remanded for a new trial.

Even assuming that the jury reasonably could find that a bus struck plaintiff after its driver ran a red light at the intersection of Madison Avenue and 125th Street while proceeding north, the evidence unquestionably established that plaintiff was struck while he was in Madison Avenue itself, not on the sidewalk on the east side of the avenue, some seven feet north of the crosswalk. The jury could not rationally have found fault on the part of the bus driver unless it accepted plaintiff's theory

that the bus was traveling "too close" to the curb as it approached the bus stop. The notion that the bus was "too close" however, is founded solely on the testimony of plaintiff's expert, that a bus driver pulling up to a bus stop should "[g]ive [her]self a cushion of space, six [feet] a lane" before pulling over to the curb. The expert's opinion about this safety cushion was supported by nothing (see Jones v City of New York, 32 AD3d 706, 707 [2006] [rejecting expert's opinion regarding ostensible safety practice because "no support was offered for th(e) assertion, either in the form of a published industry or professional standard or in the form of evidence that such a practice had been generally accepted in the relevant industry"]). But as defendant Transit Authority failed to object to the expert's testimony, the point must be conceded to plaintiff for purposes of this appeal.[1] It should be stressed, however, that there is no evidence that the bus was closer than two feet, seven inches from the curb when plaintiff was struck. Even more importantly, plaintiff's own theory of the case, a theory that is compelled by the physical evidence and is consistent with the testimony of independent witnesses, was that plaintiff was hit immediately after he stepped off the sidewalk and into the path of the bus on Madison Avenue. As is discussed below, it is indisputable, moreover, that plaintiff stepped off without looking when he was about seven feet north of the crosswalk.

Although plaintiff points to inconsistencies in the statements given by the driver, those inconsistencies are not affirmative proof of her negligence (see Barnes v City of New York, 44 AD3d 39, 47 [1st Dept 2007, Sullivan, J.]). In his brief, plaintiff refers to "damning conclusions" regarding the driver's conduct contained in an investigatory report prepared by a Transit Authority supervisor. It is clear, however, that the portions of the report to which plaintiff refers were not admitted into evidence. No mention of those conclusions was made by any of the parties during their summations. If the findings were in evidence, it is simply inconceivable that plaintiff's counsel nonetheless made no mention of them.

---

1. On appeal, plaintiff's sole argument is that "this 'cushion of space' doctrine is clearly supported" by Bello v New York City Tr. Auth. (50 AD3d 511 [2008]). Bello does not provide a shred of support for the expert's opinion. In Bello, we held that the jury could conclude that a bus driver should have been alert to the possibility that "one of the rowdy children on the sidewalk, who were pushing each other, would push another person into the bus" (id. at 511). As the Transit Authority observes, "Bello and its solicitousness for the limited capacities of a child has nothing to say to a case revolving around the irresponsibility of a mature adult." Bello cannot rationally be thought to support the expert's sweeping opinion that such a safety cushion should be observed in all circumstances.

The first reason we should reverse is that plaintiff should not have received the benefit of a jury charge under the *Noseworthy* doctrine (*Noseworthy v City of New York*, 298 NY 76 [1948]). That instruction, which permits a plaintiff to prevail on a lesser degree of proof, is borne of necessity. It mitigates the unfairness of effectively foreclosing recovery by a plaintiff who is otherwise unable to present a case because of amnesia stemming from the very accident or event for which he seeks to hold the defendant liable. But the potential unfairness to the defendant from a *Noseworthy* charge also is apparent and deserving of the law's solicitude. As we have held, "It is only where the memory loss has effectively prevented a plaintiff from describing the occurrence that invocation of the [*Noseworthy* doctrine] is warranted" (*Jarrett v Madifari*, 67 AD2d 396, 403 [1979]). In ruling that a *Noseworthy* instruction should not have been given, we stated as follows: "[O]n this record it is clear that plaintiff . . . , although he apparently suffers from a memory defect, is not entitled to application of [the *Noseworthy*] rule. Patently, said plaintiff testified in some detail at an examination before trial as to the occurrence and in much less detail at the trial. His answers, embodied in his deposition, were read at trial. Thus, in large measure, plaintiff was able to give to the trial court his version of the occurrence. . . . Whether that description proceeds by way of trial testimony or testimony at an examination before trial is irrelevant" (*id.*).

Similarly, in *Jarvis v LaFarge N. Am., Inc.* (52 AD3d 1179 [2008]), the Fourth Department held that the trial court properly denied the *Noseworthy* instruction requested by the plaintiff motorcyclist, who "was unable to recall the details of the accident" (*id.* at 1180) because of the retrograde amnesia he sustained (*id.* at 1181). The court stressed that "[a]ny gaps in plaintiff's recollection of the accident could be pieced together from plaintiff's trial testimony and the testimony of nonparty eyewitnesses" (*id.* [internal quotation marks and brackets omitted]).

Given plaintiff's deposition testimony, the *Noseworthy* instruction was a manifest error. He recalled that the weather that day was "[f]air," that the accident occurred at 9:15 and that he had parked his car and crossed the street to call a friend at a telephone booth with two phones right behind a mailbox on the east side of Madison Avenue; in addition to recalling the location of the accident, he recalled that he had been unable to reach his friend, got his money back and turned to the left while he was on the sidewalk; he recalled that when he turned he was on the sidewalk and "[t]hat is when the bus hit me, struck me

inside the head." Asked if he saw the bus before it hit him, he answered, "No." Asked where he was looking when he was hit, his recollection enabled him to testify, "I was looking straight. I don't know." Asked again, he was able to testify, "When the bus hit me, I was looking—when it hit me, I was looking straight." By "straight," he meant "across the street." When asked, "did you see what portion of the bus came into contact with you?," he first answered, "The mirror. The mirror struck me." But when asked, "Did you actually see the mirror come into contact with you?," he expressed no uncertainty and answered, "No. When I turned, made one step back to my left, that is when I saw the bus. It struck me on the side of the head." Thus, he even recalled seeing the bus at virtually the moment of impact. He was unequivocal that it was the mirror that hit him; "It struck me, you know, side of the head." Asked if he walked into the side of the bus, his answer was "No." In response to specific questions, he recalled that he did not hear a horn honk before he was hit and that he had not stepped off the curb.

But although that deposition testimony is alone sufficient to compel the conclusion that plaintiff was not entitled to a *Noseworthy* instruction (*see Jarrett*, 67 AD2d at 403 [whether the plaintiff's description of the occurrence "proceeds by way of trial testimony or testimony at an examination before trial is irrelevant"]), there is much more. Plaintiff also testified at a General Municipal Law § 50-h hearing at which he gave essentially the same testimony about the accident itself, about where he was (on the sidewalk), what hit him (the mirror) and about not hearing the bus, expressing uncertainty only about whether it was the mirror on the left or the right side of the bus. That plaintiff professed at trial not to recall whether he was completely on the sidewalk or partly on the street is of no moment. It does not negate the fact that his deposition and section 50-h testimony demonstrate that he "was able to give to the trial court his version of the occurrence" (*Jarrett*, 67 AD2d at 403).

At trial, too, plaintiff was able to present his version of the events. Asked how the accident occurred, he recalled seeing the mirror just before he was struck: "All I saw is just the mirror of the bus when it came back and knocked me down." He was able to recall what he had been doing just before he was hit: after using the phone, he "stepped back to the curb, close to the curb." Indeed, he recalled that he "was back up close to the curb . . . real close to the curb." Moreover, he recalled that he had been standing between the mailbox and the telephones. In addition, his recollection also was good enough for him to tell

the jury that he had not consumed any alcohol that day and had not stopped anywhere to drink alcohol. Thus, plaintiff was not unable to muster any response to the testimony of the triage nurse, consistent with the contemporaneous notes he prepared after plaintiff was taken to the hospital, that plaintiff had told him he was intoxicated.

Although the concurrence cites *Sala v Spallone* (38 AD2d 860 [1972]), that decision only exposes another fatal defect in plaintiff's position. In *Sala*, the Second Department held that a *Noseworthy* instruction should be given "if the jury is satisfied, from the medical and other evidence presented, that [the plaintiff] suffers from a loss of memory that makes it *impossible* for him to recall events at or about the time of the accident and that the injuries he received as a result of the accident were a substantial factor in causing his memory loss" (*id.* [emphasis added]). Here, it plainly was not impossible for plaintiff to recall events at or about the time of the accident. The neurologist who testified on behalf of plaintiff certainly never so testified. Nor did he offer anything remotely like an opinion that the prior testimony given by plaintiff was unreliable on account of the injuries he sustained. In fact, when asked to explain the diagnosis of "anter[o]/retrograde amnesia," the neurologist testified only that "anter[o]/retrograde amnesia is you don't remember things that happened *subsequent* to the accident—*after* the accident" (emphasis added). We might indulge the assumption that the jury nonetheless realized that this testimony mistakenly described only the anterograde amnesia component of the diagnosis and that plaintiff's retrograde amnesia referred to an inability to remember events occurring before the accident. But even so, the jury heard no evidence that plaintiff's memory had been impaired so as to render unreliable his hearing and deposition testimony about the events prior to the accident. And, of course, when he gave that testimony, plaintiff never testified that he thought that the details that he recalled might be wrong because of his injuries.[2]

The trial court concluded that the instruction was proper in significant part because the core of the account plaintiff gave at his deposition and section 50-h testimony was contradicted by the physical evidence. That is, and as plaintiff's counsel

---

2. For these additional reasons, the *Noseworthy* instruction was a clear error. We need not consider whether it also was erroneous because of the testimony of the nonparty eyewitnesses (*Jarvis*, 52 AD3d at 1181 ["Any gaps in plaintiff's recollection of the accident could be pieced together from plaintiff's trial testimony *and* the testimony of nonparty eyewitnesses" (internal quotation marks and brackets omitted and emphasis added)]).

acknowledged in his opening statement, plaintiff could not have been struck by the mirror because it was too high up to have come into contact with plaintiff's head. According to the trial court, a *Noseworthy* instruction was warranted because of the "competent medical evidence that plaintiff did have amnesia and his version of the events was at odds with most of the eyewitnesses as well as not detailed." Even putting aside the infirmity noted above in the testimony about plaintiff's amnesia, the trial court erred because plaintiff did testify in detail about the occurrence. The trial court's finding to the contrary is manifestly wrong. As noted, plaintiff's testimony that he was struck by the mirror of the bus is what was at odds with the accounts given by other eyewitnesses (and with the objective fact that he could not have been hit by the mirror). But it scarcely follows that his testimony about this one detail is sufficient to warrant a *Noseworthy* instruction. To the contrary, the precedents discussed above make clear that it is not.

Moreover, there certainly are other possible explanations, i.e., ones other than amnesia, for plaintiff's repeated insistence that he was hit by the mirror. If the last thing plaintiff saw was the mirror, his testimony that he was struck by the mirror may have been the result of a simple mistake, rather than a brain injury. Or, as the Transit Authority argues, "[p]laintiff would appear far less blameworthy if he were on the curb and the projecting mirror of a passing bus s[truck] him in the head than if he had walked off the curb . . . and . . . into [the bus'] doors." But in any event, regardless of whether plaintiff was mistaken or lied to avoid admitting he had stepped off the curb and into the street without looking, the crucial fact is that there was *no* medical testimony to the effect that this or any other detail to which plaintiff testified was unreliable because of his head injury.[3]

The jury's irrational finding of no comparative negligence is the second and independent reason why a new trial is necessary. Plaintiff's efforts to uphold that finding are meritless. Except in one respect, this case is indistinguishable from *Splain v New York City Tr. Auth.* (180 AD2d 454 [1992], *lv denied* 80 NY2d 759 [1992]). In *Splain*, "[p]laintiff's evidence demonstrated that he was on the sidewalk at the curb in the middle of a block

---

**3.** Plaintiff is wrong to the extent he contends that the *Noseworthy* instruction was proper because the bus driver had better knowledge than he of what happened. Establishing that the defendant's knowledge of the relevant facts is superior to the plaintiff's is a necessary condition that a plaintiff with retrograde amnesia must satisfy to obtain a *Noseworthy* instruction. But it is not a sufficient condition. Neither *Walsh v Murphy* (267 AD2d 172 [1st Dept 1999]) nor any other case holds otherwise.

when, without turning his head to look for traffic, he suddenly stepped off, almost instantly colliding with the side of a Transit Authority bus travelling at a speed of from 10 to 15 miles per hour." We held, of course, "that these facts do not establish any actionable negligence" (*id.*). *Splain* is distinguishable only on the ground that the safety-cushion theory of liability was not advanced. But the presence of that theory in this case does not absolve plaintiff of all liability.

The decision of the Court of Appeals in *Rucker v Fifth Ave. Coach Lines* (15 NY2d 516 [1964], *cert denied* 382 US 815 [1965]) also is instructive. In *Rucker*, the Court of Appeals held, "upon the ground, fully developed in the dissenting opinion at the Appellate Division, that the plaintiff failed, as a matter of law, to establish actionable negligence" (*id.* at 517). As Justice Steuer stated in that dissenting opinion: "The claim that the [bus] driver on seeing the plaintiff standing out from the curb should have anticipated that she might at any time have proceeded into the street and hence into the path of his bus, and have slowed down, assumes a rule of conduct utterly at variance with street conditions and, if followed in practice, would undoubtedly so disrupt traffic that the streets would become well nigh unusable for vehicles" (*Rucker v Fifth Ave. Coach Lines*, 19 AD2d 598, 599 [1963]). If there were such a duty: "[A] driver would be obliged to stop or slow down to the extent that he could stop in time, his progress would be so affected at practically every corner he approached that vehicular traffic would be impeded to an intolerable extent" (*id.*).

But the most critical point is that, even assuming that the bus driver was negligent, plaintiff's own negligence is just indisputable. As noted earlier, plaintiff's own theory of the case is that he stepped off the curb and into the street. Plaintiff's counsel expressly so conceded at oral argument of this appeal. At trial, plaintiff's expert gave his opinion as to how the accident happened: "My opinion is that the bus is traveling adjacent to the curb, very close to the curb, Mr. Williams turns and takes one step and has an accident." Moreover, it is indisputable that plaintiff stepped into Madison Avenue without looking. Apart from plaintiff's own testimony that he was looking "straight" (i.e., "across the street," to the west and not downtown), there is common sense. Who would step off the curb and into a bus after looking and seeing it coming? Other indisputable facts supportive of a finding of comparative negligence are that plaintiff was some seven feet north of the crosswalk, and that the bus was not closer than two feet, seven inches from the curb, when the bus hit plaintiff.

Although no additional citation of authority is necessary, plaintiff's conduct was manifestly negligent (*see e.g. Pinto v Selinger Ice Cream Corp.*, 47 AD3d 496 [2008]). Albeit very infrequently, juries sometimes make findings that are utterly without foundation in the law or the evidence. This is one such case, and the finding of no comparative negligence is so irrational as to require that we unconditionally direct a new trial (*see e.g. D'Onofrio-Ruden v Town of Hempstead*, 29 AD3d 512 [2006]), rather than order a new trial unless plaintiff agreed to a specific share of culpability (*see e.g. Streich v New York City Tr. Auth.*, 305 AD2d 221 [2003]).

Most of the remaining issues may be dealt with more summarily. Even assuming for the moment that the Transit Authority's challenges to the sufficiency of the evidence have been waived by its failure to move under CPLR 4401 for a directed verdict at the close of plaintiff's case (*but see* Siegel, NY Prac § 405 [4th ed]), the Transit Authority's weight-of-the-evidence arguments are properly before us. With respect to the theory of liability premised on the claim that the bus driver ran a red light, it is supported only by conjecture. The ambulance driver, who also had been proceeding north on Madison Avenue and saw the accident, gave no such testimony; indeed, *no* witness testified that the bus ran a red light. But in any event, this theory of liability is fatally flawed for another reason. Plaintiff was some seven feet north of the crosswalk—the evidence on this score is uncontested—and he stepped off the curb without looking. Thus, the color of the light and the precise speed of the bus are irrelevant[4] (*Sheehan v City of New York*, 40 NY2d 496 [1976]). A finding of liability on the safe-cushion theory advanced by plaintiff's expert, however, is supported by legally sufficient evidence. Accordingly, we need not decide whether it is supported by the weight of the evidence, as the Transit Authority would not be entitled in any event to dismissal of the complaint.

The Transit Authority is entitled to no relief on account of its claim that plaintiff unilaterally amended the notice of claim to assert that he was hit not by the mirror but by some other front part of the bus. Contrary to the Transit Authority's claim, plaintiff did not thereby advance a new and distinct theory of liability (*cf. Monmasterio v New York City Hous. Auth.*, 39 AD3d

---

4. At most, based on unpersuasive extrapolations, plaintiff's expert opined that the bus was moving at up to 18 miles per hour when it hit plaintiff (as opposed to 5 to 10 miles per hour estimated by the ambulance driver). The opinion of plaintiff's expert on the speed of the bus, however, is relevant to and supports the safe-cushion theory.

354, 356 [2007]). As there should be a new trial, we briefly address the Transit Authority's argument that a missing document charge should not have been given with respect to the missing color photographs. Black-and-white versions of the photographs were admitted; the Transit Authority employee who took the photographs acknowledged that he saw blood, that the blood was on the sidewalk and that blood was not visible on the black-and-white photographs but would have been visible in the missing color photographs. To be sure, the Transit Authority provided no explanation at all for the absence. But a missing document charge should not be given unless the document bears on a material issue at trial (cf. *People v Gonzalez*, 68 NY2d 424, 427 [1986]). We need not (and should not, given the sparseness of the record on the question) resolve the question of whether the color photographs bear on a material issue at trial concerning precisely where the bus hit plaintiff. The parties should focus on that question in the event the issue arises at the new trial. Concur—Gonzalez, P.J., McGuire and Abdus-Salaam, JJ.

Saxe and Acosta, JJ., concur in a separate memorandum by Saxe, J., as follows: Like my colleagues, I would reverse and remand for a new trial. I write separately, however, because I would reverse on different grounds.

Unlike the majority, I do not view the trial court's use of the *Noseworthy* charge (*see Noseworthy v City of New York*, 298 NY 76 [1948]) as improper. On the contrary, I perceive a sound basis for the court's finding that plaintiff had suffered memory loss (*see Sala v Spallone*, 38 AD2d 860 [1972]) that effectively prevented him from accurately recalling the events (*see Jarrett v Madifari*, 67 AD2d 396 [1979]). As to defendants' contention that plaintiff should have been precluded from presenting for the first time at trial a new description of the accident, based on the assertions in his notice of claim, I join the rest of the bench in rejecting that challenge.

In my view, a new trial is necessary because the jury's liability findings were against the weight of the evidence, both on the issue of the bus driver's negligence and on the issue of the plaintiff's own negligence. As to plaintiff's comparative negligence, there was no dispute that plaintiff stepped onto Madison Avenue north of the crosswalk at 125th Street without first checking for oncoming vehicles, an act that qualifies as negligent. The driver's various contradictory statements about how the accident happened do nothing to extinguish the undisputed fact that plaintiff stepped out into the roadway without first checking for oncoming vehicles. The jury's decision to attribute no comparative negligence to plaintiff under such circumstances is inexplicable.

As to plaintiff's claim of the driver's negligence, it rested too heavily on assertions unsupported by evidence or law to be permitted to stand. One claimed basis of liability was the assertion by plaintiff's expert that a bus driver ought to maintain a six-to-eight-foot "cushion" of space between the bus and the curb until it reaches the bus stop, at which point it should pull in adjacent to the curb. There is no basis in law for the imposition of such a duty on bus drivers; there is no such regulatory or industry standard. Indeed, there are a number of reasons why imposing such a duty on bus drivers would be inadvisable. Even if defendants failed to sufficiently challenge the theory proffered by plaintiff's expert as unfounded, we should rule on the issue in the interest of justice in order to avoid reliance on that reasoning for future liability claims against bus companies and drivers.

Another invalid basis proffered by plaintiff as support for the claim of negligence against defendants was the assertion that the bus driver ran a red light at 125th Street. There was no testimony either so stating or supporting such an inference. The eyewitness ambulance driver who was also heading northbound on Madison Avenue, but was stopped in the far right lane at a red light on 125th Street, merely stated that defendant's bus had proceeded northbound towards the bus stop just north of where plaintiff was standing, that plaintiff stepped off the sidewalk onto Madison Avenue, and that the bus then struck plaintiff and knocked him back onto the curb. Nothing in what he or any other witness described indicated in any way that the bus had run the red light.

In any event, the assertion that the traffic signal at 125th Street was red when defendant bus driver drove through the intersection is meaningless, since plaintiff was seven feet north of the crosswalk, and stepped into the roadway without checking either the light or the road for oncoming vehicles. The color of the traffic light would have had virtually no bearing on the occurrence of the accident.

Finally, the driver's many contradictory statements may justify a rejection of the driver's credibility, but they cannot substitute for an affirmative showing of negligence.

Although defendants' failure to move for a directed verdict pursuant to CPLR 4401 at the close of evidence precludes the dismissal on appeal (*see Miller v Miller,* 68 NY2d 871 [1986]) to which defendants claim entitlement under *Splain v New York City Tr. Auth.* (180 AD2d 454 [1992], *lv denied* 80 NY2d 759 [1992]), both plaintiff's excessive reliance on unsupported reasoning, and the jury's failure to find any comparative negligence

despite plaintiff's undisputed conduct, warrant a reversal and a remand for a new trial on liability.