EMMA E. DIXON ET AL., APPELLEES, v. PAUL J. O'CONNOR ET AL., APPELLANTS, IMPLEADED WITH YORK STATE BANK, YORK, NEBRASKA, ET AL., APPELLEES.

143 N. W. 2d 364

Filed June 17, 1966. No. 36228.

John E. Dougherty, for appellants.

Robert B. Waring and Herman Ginsburg, for appellees Dixon.

Maynard M. Grosshans, for appellee York State Bank.

Gerald F. Beaver, for appellee Bourke Grain Co.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and MURPHY, District Judge.

McCOWN, J.

This is a declaratory judgment action in which the plaintiffs sought determination of the status and relations of the plaintiffs and the defendants O'Connors, hereinafter referred to as defendants or O'Connors, arising out of a certain real estate contract entered into between the parties. Plaintiffs contended that the relation of landlord and tenant existed between the parties and in the action sought an accounting for the landlords' share of the crops growing upon the real estate involved at the time of the contract of sale and recovery of a judgment for the amount due on such accounting. The trial court held that the relation between the plaintiffs and defendants was that of landlord and tenant, and that the defendants, as tenants, were obligated to account to the plaintiffs for the landlords' share of the growing crops and for the accruing rentals prior to March 1, 1965; and entered judgment in favor of the plaintiffs upon such accounting in the sum of $8,241.16 and costs. Thereafter this appeal was perfected.

Prior to September 15, 1964, the plaintiffs, Lloyd and Emma E. Dixon, owned approximately 320 acres of improved irrigated land in Fillmore County. At that time and for some years prior thereto, the defendants O'Connors, appellants here, were tenants of the plaintiffs as to approximately 215 acres of this property; and J. R.

Warren was a tenant of approximately 105 acres of the property. The rental terms under the O'Connors' lease were two-fifths of the crops and $1,000 cash, plus $10 an acre for the alfalfa land. Sometime prior to September 15, 1964, the plaintiffs advertised the entire property for sale by newspaper advertisements and sale bills. The published terms of the sale provided: "The above land will be sold on contract as follows: 15% down payment on date of sale. An additional payment of 10% of the purchase price to be made on March 1, 1965, when possession will be given. The unpaid balance to be carried by the owner for a period of ten years, with equal annual payments on principal, due on March 1 of each year until the balance is paid in full, with interest at the rate of 5% per annum. Buyer shall have the option of paying off the unpaid balance in full after 5 years from and after March 1, 1965. Deed and abstract to be left in escrow with the York State Bank where payments are to be made until unpaid balance is retired."

The publications also contained the statement: "We invite you to inspect this top irrigated farm, which will positively be sold to the highest bidder the day of sale, without reservations."

The auctioneer announced the terms in accordance with the newspaper advertisement and the sale bills. At the auction, the entire property was sold to the defendants O'Connors. On September 17, 1964, a contract of sale was entered into between the plaintiffs as sellers and the defendants O'Connors as purchasers for the sale of the property, which included the property leased by the O'Connors as well as the property leased by J. R. Warren. The contract contained the same terms as the published notices and paragraph 6 of the contract stated: "Possession of said real estate shall be given on March 1, 1965, the present leases thereon to be in full force and effect until such date." The downpayment as provided by the real estate contract was paid and the payment

due on March 1, 1965, was paid. The warranty deed required by the contract was placed in escrow at the York State Bank and contained no reservations or exceptions. After the execution of the contract of sale involved in this case, the O'Connors refused to account for or pay any rent to the plaintiffs for the remainder of the year 1964 and accruing prior to March 1, 1965, and in addition, the O'Connors took the landlords' share of the crops due from J. R. Warren.

Essentially, the defendants' argument boils down to two basic contentions. First, that the execution of the contract for the sale of the real estate automatically carried with it to the buyer under the contract the growing crops and accruing rentals, and, second, that the form of the action instituted was improper. The defendants cite rules of law that growing crops upon lands are a part of the real estate and pass to a purchaser unless reserved, and that an auction sale can be a valid and binding sale. With these general rules we do not disagree. However, the contract between the parties stipulated that the seller reserved possession until March 1, 1965, and also that the present leases were to remain in full force and effect until such date. We find no support for the position that either title or possession passed prior to March 1, 1965. In Nebraska the law is well established that by the deposit of a deed in escrow subject to delivery upon the satisfaction of certain conditions, the title does not vest in the grantee named in the deed until the fulfillment of the conditions. As early as the case of Patrick v. McCormick, 10 Neb. 1, 4 N. W. 312, this court said: "An escrow is a conditional delivery to a stranger, to be kept by him until certain conditions are performed, and then to be delivered to the grantee. * * * But until the condition is performed and the deed delivered over, the estate does not pass, but remains in the grantor."

In Pike v. Triska, 165 Neb. 104, 84 N. W. 2d 311, at page 119, we said: "Until the performance of the con-

dition the legal title to the land to be conveyed remains in the grantor." The grantor retains legal title and its concomitants until performance of the conditions of the escrow contract by the grantee. See Valentine Oil Co. v. Powers, 157 Neb. 71, 59 N. W. 2d 150.

The contract here provided that "possession of said real estate shall be given on March 1, 1965." A purchaser of land under a contract of sale is not entitled to possession until full performance by him. Stukenholtz v. Parriott, 113 Neb. 296, 202 N. W. 873.

As to the rights of a purchaser under a contract of sale to receive crops and rentals accruing prior to the date fixed by the contract for the vesting of possession in the purchaser, the law seems well settled. The rule is stated in 21 Am. Jur. 2d, Crops, § 12, p. 591, as follows: "The general rule that growing crops pass with a transfer of the title to the land ordinarily applies where the title to the land is transferred by virtue of a contract of sale. Thus, on the theory that equity treats things agreed to be done as actually performed, where real estate is agreed to be conveyed by a valid contract of sale, without reservation, and the vendee has the right to possession, the equitable title passes at once to the vendee and with it title to all crops growing on the land. If, however, the purchaser is given no right to the possession until the time for conveyance arrives, he acquires no interest in the growing crops which mature and are harvested before the time for the conveyance and his right to possession arrives."

In Stukenholtz v. Parriott, *supra,* this court pointed out that: "If neither Austin nor his vendee was entitled to possession, they had no right to lease the land to Parriott, and the latter simply held over as the tenant of Bennett (the vendor)." The case clearly recognizes that where a purchaser is not entitled to possession, he is not entitled to the rentals accruing prior to the possession date. It is presumably the position of the defendants that at least as to the land they were leasing, their

possession as tenants constitutes possession under the purchase contract as well as under the lease. Paragraph 6 of the contract specifically states: "Possession of said real estate shall be given on March 1, 1965, the present leases thereon to be in full force and effect until such date." The defendants' right to possession was only as tenants under the lease and not as owners under the purchase contract. A purchaser under a contract of sale such as involved here has no rights in or to the sellers' interest under any existing leases until the time of possession specified in the contract of sale.

The defendants also contend that they were entitled to a jury trial, and that that right cannot be destroyed by bringing an action for declaratory judgment. The court here specifically and properly found that the relation existing between the parties was that of landlord and tenant, and that the defendants, as tenants, were obligated to account for the landlords' share of the growing crops and for the accruing rentals prior to March 1, 1965. An action by a landlord against his tenant for an accounting for the rent share of crops is properly brought as an action in equity. In Schmidt v. Henderson, 148 Neb. 343, 27 N. W. 2d 396, it is stated: "This court in Wendt v. Stewart, 74 Neb. 855, 105 N. W. 550, said: 'Where, by the terms of a lease, rent is reserved in a share of the crops, the landlord and tenant are tenants in common of the growing crops * * *.' Taking into consideration the facts of this case we are convinced that an adequate remedy was available only within the equitable jurisdiction and that the court did not err in its refusal to grant a jury trial."

The question of what the relationship of the parties was after the making of the contract of sale was clearly a question to be settled by a declaratory judgment proceeding. Where a court of equity obtains jurisdiction of a cause for any purpose, it will retain it for all and will proceed to a final determination of the case, adjudicate all matters in issue, and thus avoid unneces-

sary litigation. See Corn Belt Products Co. v. Mullins, 172 Neb. 561, 110 N. W. 2d 845.

In Richardson v. Waterite Co., 169 Neb. 263, 99 N. W. 2d 265, this court said: "In a declaratory judgment action on a contract, the court may not only construe the contract but it is authorized to enter judgment for the amount due thereunder in the light of the interpretation made." See, also, United Services Automobile Assn. v. Hills, 172 Neb. 128, 109 N. W. 2d 174, 2 A. L. R. 3d 1422.

Here a declaratory judgment was proper for the determination of the rights, status, and relations of the parties. Where the trial court adopted the plaintiffs' contention that the relationship was that of landlord and tenant, the plaintiffs' subordinate demand for an accounting was then properly within the equitable jurisdiction of the court. Having properly obtained jurisdiction for one purpose, the trial court quite properly retained it for all, granted complete relief between the parties, and avoided the necessity for further litigation.

The judgment of the district court was proper and is affirmed.

AFFIRMED.