BASIN ELECTRIC POWER COOPERA-TIVE, a Corporation, Plaintiff and Appellee,

v.

Harold PAYNE, Lloyd Payne, and Alma Bowman, Defendants and Appellants,

and

Hand County, Defendant.

No. 12954.

Supreme Court of South Dakota.

Argued Sept. 12, 1980.

Decided Nov. 12, 1980.

**386**

John F. Murphy of Donley & Murphy, Elk Point, for plaintiff and appellee.

Wally Eklund of Johnson, Johnson & Eklund, Gregory, for defendants and appellants.

MORGAN, Justice.

This appeal arises from an order of the trial court finding that Basin Electric Power Cooperative (Basin), a corporation, had the "right to take," by condemnation pursuant to SDCL Ch. 21–35, an easement across appellants' land. Appellants urge bad faith and abuse of discretion as to the location of the easement and error in the trial court's failure to remand the matter to the Public Utilities Commission (PUC) for hearing. We affirm.

The easement in question is one of several which Basin sought to acquire across parts of South Dakota from the North Dakota border to a substation situated at Broadland, South Dakota, continuing on to a switchyard located north of Huron, South Dakota. The transmission line is referred to as the Antelope Valley Transmission Line. After negotiations with appellants failed, Basin filed a condemnation suit in Circuit Court, Third Judicial Circuit, Hand County. Appellants filed and served a demand for hearing pursuant to SDCL 21–35-10.1 to determine Basin's "right to take."

Appellants concede that Basin complied with general legal and statutory requirements to construct the line and the eminent domain power of Basin under South Dakota statutes. Appellants contend, however, that Basin acted in bad faith and abused its discretion in locating the line between angle points 27 and 30, part of which line traverses their property. Further, they urge that because of the location of the line in close proximity to their home and to their cattle shed, and because of the potential health hazard created by the electric field that builds up around a high-voltage electrical transmission line, the trial court should have remanded the matter to the PUC.

Appellants raise two issues on appeal. We will first examine the second issue, which concerns procedure. As previously noted, the matter was before the trial court on a demand for a hearing on Basin's "right to take." SDCL 21–35–10.1. Contrary to appellants' counsel's statement during appellate oral argument, the responsive pleading under SDCL 25–35–10.1 did not attempt to inject any question of pollution. The issue before the trial court on such proceeding is the question of fraud, bad faith, or abuse of discretion by the condemnor, the presence of any one of which could vitiate the taking.[1]

> A broad discretion is necessarily vested in those to whom the power of eminent domain is delegated, in determining what property is necessary for the public purpose, with respect to the particular route, line, or location of the proposed work or improvement, and the general rule is that the courts will not disturb their action in the absence of fraud, bad faith, or gross abuse of discretion.

26 Am.Jur.2d Eminent Domain § 113 (1966) (footnotes omitted).

At the commencement of the hearing appellants orally moved in the alternative: (1) To remand the proceedings to the PUC pursuant to SDCL Ch. 49–41B, the South Dakota Energy Facility Permit Act (SDEFPA); or (2) to remand the proceedings to the PUC pursuant to SDCL 34A–10–5. The parties stipulated that the Antelope Valley Transmission Line (of which the line in

---

1. SDCL 21–35–10.1 provides, in pertinent part: The finding of necessity by the plaintiff, unless based upon fraud, bad faith or an abuse of discretion, shall be binding on all persons.

question is a portion) was commenced within the boundaries of South Dakota prior to July 1, 1979. The trial court denied the first alternative motion for the reason that, by the terms of SDCL 49–41B–4, the SDEFPA was not applicable to construction begun before July 1, 1979. Appellants do not dispute this ruling on appeal.

■ The second alternative is the procedural issue before us. As noted, the motion was presented orally to the trial court and argued without submission of briefs. From the context of the presentation it appears that the trial court and opposing counsel had been previously advised of appellants' intention to present the motion. The trial court ruled from the bench that SDCL 34A–10–5 did not apply to the proceedings before it, and that SDCL Ch. 34A–10 gave appellants a cause of action to commence their own lawsuit. We agree with the trial court's determination that SDCL 34A–10–5 did not apply to the proceedings before the court.

SDCL 34A–10–5 was originally enacted as a part of the South Dakota Environmental Protection Act (EPA) of 1973 (1973 S.D. Sess.Laws ch. 144). SDCL 34A–10–1 of this Act authorizes a cause of action for declaratory and equitable relief for the protection of the air, water, and other natural resources and the public trust therein from pollution, impairment, or destruction. SDCL 34A–10–5 then provides:

> If administrative, licensing or other proceedings are required or available to determine the legality of the defendant's conduct, the court shall remit the parties to such proceedings, which proceedings shall be conducted in accordance with and subject to the provisions of chapters 34A–1 and 34A–2.

Chapters 34A–1 and 34A–2, respectively, are related to air and water pollution controls. From the context of appellants' arguments they are not asserting any form of water pollution, so we will disregard any further references to SDCL Ch. 34A–2, Water Pollution Control. The "court" referred to is obviously the court in which the EPA action is pending.

No administrative or licensing procedures were required to determine the legality of Basin's conduct. Overlooking for the moment appellants' counsel's omission of any argument regarding the obvious identification of the "court" which we mentioned above, we will assume that the "right to take" proceeding, then before the trial court under SDCL 21–35–10.1, qualified as an "other proceeding" as referred to in the statute. We then look at the question whether the trial court should have conducted the hearing in accordance with and subject to the provisions of SDCL Ch. 34A–1. In argument, appellants' counsel suggested that to implement this requirement, the trial court should have remanded the case to the PUC in the nature of a reference for that commission to hold a public hearing and for its expertise on the pollution question. This is merely appellants' counsel's procedural theory, and it is without any statutory language in support of it.

This theory has two basic flaws. First, SDCL Ch. 34A–1 has nothing whatsoever to do with the PUC. Rather, it involves the Secretary of Health and the Board of Environmental Controls. Nowhere in that entire section of the code is the PUC designated as an agency to determine air or water pollution.

Secondly, the air pollution described in SDCL Ch. 34A–1, on which appellants rely, arises from: "[D]ust, fumes, mist, smoke, other particulate matter, vapor, gas, odorous substances, *radioactive materials as defined in chapter 34–21*, or any combination thereof."[2] (Emphasis added.) The radioactive materials as defined in SDCL Ch. 34–21 are: "[A]ny material, solid, liquid, or gas *which emits radiation spontaneously.*"[3] (Emphasis added.) Webster's Third New International Dictionary, unabridged (1971), defines "spontaneous" as "3: caused by internal energy controlled and directed internally: self-acting." From this reading we

---

2. SDCL 34A–1–2(1).

3. SDCL 34–21–2(3).

must deduce that SDCL Ch. 34A–1 was never intended to deal with the type of radiation which appellants contend exists in the vicinity of high-voltage transmission lines, so that SDCL Ch. 34A–1 is not applicable, and, therefore, neither is the "other hearing" provision in SDCL 34A–10–5.

■ We next examine appellants' contention that Basin's location decision was the result of an abuse of discretion. In this regard the trial court found, in essence: Basin, through the use of map examination, aerial photography and survey, and specific field surveys, calculated a proposed route between angle point 27 and angle point 30, which ran through appellants' property and was situated approximately fifty feet from a polebarn and approximately three-hundred-ninety feet from a dwelling house. Thereafter Basin, after conversation with appellants, prepared an adjusted route, which is the presently proposed route, lying approximately four-hundred-fifty feet from the polebarn and approximately seven-hundred-ninety feet from the dwelling house.

Yet appellants argue that they proposed three alternate routes that were more acceptable. As to this the trial court found, again in essence: Alternate route 1 would exclude all of appellants' property, but of course would affect other landowners not parties to this action; alternate route 2 would apparently directly affect at least two other farm dwellings owned by two different landowners, as well as affecting other landowners not parties to this action; and alternate route 3 would also affect other landowners, including a witness who had already entered into an easement contract with Basin, which indicated his satisfaction with the proposed route as it crossed his property. The trial court summarized that the general route (land makeup) through which appellants' alternate routes cross differs very little from Basin's present proposed route.

Specifically with respect to the spectre of health hazard, the trial court found:

Their insufficient evidence to support the existence of any environmental and/or health problems.

[Appellants'] reason is a legitimate concern, but that [Basin] has maintained to the maximum extent practicable the minimum distance between the powerline and said polebarn.

In discussing "abuse of discretion" the Supreme Court of Michigan said in *Wendel v. Swanberg*, 384 Mich. 468, 475, 185 N.W.2d 348, 351 (1971) (citations omitted):

"The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."

As we review the record, it amply supports the trial court's findings. Basin extensively used maps, aerial photography and survey, and specific field surveys in making its determination. After meeting with appellants, Basin also changed its original proposed route so that it would be located further away from appellants' polebarn and dwelling house. Based on the evidence in the record, it appears that Basin did what it could to establish the proper route.

We agree with the North Dakota Supreme Court when it stated:

[M]uch latitude is given to the corporation vested with the right of acquiring property by eminent domain to determine the extent of the property necessary to be taken....

... [I]t is entitled to the same latitude in determining the selection and location of the route for its power transmission line....

.     .     .     .     .

The landowner may not object merely because some other location might have been made or some other property obtained that would have been as suitable for the purpose.

*Otter Tail Power Company v. Malme,* 92 N.W.2d 514, 521 (N.D.1958).

The trial court's findings support the conclusions of law that Basin "has the 'right to take' the present proposed route between Angle Point 27 and Angle Point 30 of the Antelope Valley Station Project ...," and that "[t]he finding of necessity by [Basin] is not based upon fraud, bad faith, or an abuse of discretion."

We therefore hold that the trial court did not err in refusing to remand the matter to the Public Utilities Commission under SDCL 34A–10–5, nor did it err in not applying SDCL Ch. 34A–1 to the proceedings as they were conducted.

All the Justices concur.