NORMAN E. HEIMBOUCH, APPELLEE AND CROSS-APPELLANT, V. VICTORIO INSURANCE SERVICE, INC., APPELLANT AND CROSS-APPELLEE.

369 N.W.2d 620

Filed June 28, 1985.   No. 84-432.

Robert W. Mullin of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellant.

John F. Simmons of Wright, Simmons & Selzer, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

This is a declaratory judgment action brought by the plaintiff, Norman E. Heimbouch, to determine his rights under a written contract with the defendant, Victorio Insurance Service, Inc. The contract was entitled:

VICTORIO INSURANCE SERVICE, INC.

AGENCY—SALESPERSON CONTRACT
INDEPENDENT CONTRACTOR

The defendant operated an insurance agency and business in Scottsbluff, Nebraska. Under the terms of the contract the plaintiff generally agreed to work as an independent contractor insurance salesman for the defendant, in return for 55 percent of the commissions. The defendant agreed to furnish office space and clerical service.

Article XI of the agreement contained provisions in regard to its termination. Paragraph D of that article included a covenant not to compete, which provided:

Upon termination of this agreement, Salesperson shall not at any time within three (3) years from the closing hereof, directly or indirectly, solely or jointly, with or as an agent for any other person, firm or company, sell, canvass, solicit, service or accept any property or casualty insurance business or request any such persons to withdraw, curtail or cancel their business with Agency, or in any other manner enter into competition with Agency for insurance business within a twenty-five (25) mile radius of Scottsbluff, Nebraska. Salesperson agrees that the insurance files, documents and information sold hereunder are confidential and are of a proprietary and trade secret nature, and that disclosure or use by them or either of them of any such files, documents or information could irreparably damage Agency's business and the value of the business and assets hereunder, and Salesperson, therefore, agrees that it will not divulge to

anyone but Agency, at any time, any information contained in any of said customer files or documents, unless such divulgence is necessary to effectuate and enforce this agreement in a court of law or equity. Salesperson further agrees that in the event of their failure to perform the aforesaid promises and agreements, Agency shall have the right to an injunction to restrain Salesperson from further violations of this agreement, as well as the right to damages for the breach of the promises and agreements herein contained.

Pursuant to article XIII, paragraph C, of the agreement, the agreement was personal and nonassignable.

The agreement further provided for the payment of "Termination Compensation," which the parties have agreed amounts to $28,636.71. Twenty-five percent of that amount was to be paid within 90 days following termination; the balance payable in five equal annual installments of principal plus interest accumulating at the rate of 6 percent per annum.

While the agreement was still in effect, the defendant commenced negotiations for the sale of the agency to J. G. Elliott Company. Prior to the sale, the president of the defendant Victorio, Robert A. Stapp, contacted the plaintiff and offered to alter the terms of the termination compensation to the plaintiff's benefit in exchange for an agreement by the plaintiff not to compete with J. G. Elliott for 3 years. The plaintiff declined to accept the offer. On March 31, 1983, Victorio was sold to J. G. Elliott Company. Thereafter, Stapp notified the plaintiff in a hand-delivered letter dated April 1, 1983, that the parties' agreement would be terminated in 30 days.

The plaintiff subsequently purchased his own insurance agency and commenced this action in which he prayed, as is relevant here, first, for a declaratory judgment that he may continue in the insurance business in Scottsbluff without being in violation of the parties' contract and, second, for a judgment for that portion of termination pay alleged to be due August 29, 1983, for a declaratory judgment that the balance is due as per the parties' contract, and for attorney fees and payments to be made pursuant to the Nebraska Wage Payment and Collection

Act, Neb. Rev. Stat. §§ 48-1228 et seq. (Reissue 1984).

Victorio counterclaimed that the plaintiff had breached the contract and that it had been damaged thereby.

After a bench trial the trial court granted the plaintiff a declaratory judgment in accordance with his first prayer. Regarding the termination compensation, the trial court granted a judgment for the amount currently payable and granted a declaratory judgment with specific findings as to the amounts Victorio remained obligated to pay. This amount was offset by the amount of the judgment granted on Victorio's counterclaim. The trial court also found that the Nebraska Wage and Payment Collection Act was not applicable.

Since this was essentially a law action, the applicable standard of review is that the findings of the trial court have the effect of the verdict of a jury and will not be set aside unless clearly wrong. *Havelock Bank v. Western Surety Co.*, 217 Neb. 560, 352 N.W.2d 855 (1984).

The first issue concerns the proper interpretation of the covenant not to compete and its relationship to the provisions regarding termination compensation. The defendant contends that the plaintiff is not entitled to termination compensation because the consideration for that part of the agreement failed. This argument assumes that the covenant not to compete imposed two requirements on the plaintiff: a duty not to compete with Victorio, and an agreement to sell "the insurance business he had generated to Victorio." Brief for Appellant at 12. The defendant argues that although the covenant not to compete contained in article XI, paragraph D, may have been moot after Victorio was sold, in the sense that Victorio no longer existed to compete against, it did not eliminate the obligation not to compete if the plaintiff wanted termination compensation. In its brief at 16 the defendant states the obligation as such:

> He had a contractual obligation not to interfere with the valuable business asset, i.e., the present customers, and he had the opportunity to agree to extend the non-competition to Victorio's successor. He could have had the termination pay if he had done exactly what the contract required. Because of the sale, he could not be

forced to comply and he chose not to comply.

Apparently, the defendant attaches special significance to the word "sold" which appears in the second sentence of article XI, paragraph D: "Salesperson agrees that the insurance files, documents and information *sold* hereunder are confidential . . . ." (Emphasis supplied.) Based on this singular use of the word, the defendant argues that the consideration for 85 percent of the termination pay the plaintiff was to receive was his "sale" of the insurance business he had generated to defendant. The real problem, as conceded by Victorio in its brief to this court, is: "The contract is relatively clear, but it does not address the issue of termination pay in the event the agency is sold." Brief for Appellant at 10.

"A written contract which is couched in clear and unambiguous language is not subject to a construction other and different from that which flows from the language used." *Moreland v. Transit Auth. of Omaha*, 217 Neb. 775, 779, 352 N.W.2d 556, 559 (1984). Guided by this rule, the defendant's interpretation of the contract must be rejected. The relevant contract clauses plainly provide that should the agreement be terminated, the plaintiff would not compete with *Victorio*, and the plaintiff would receive termination compensation as set forth in the agreement.

In its second assignment of error the defendant contends that the trial court erred in entering a present judgment for future installment payments of termination compensation. Pursuant to Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1979), an action for declaratory judgment determines the rights of the parties in a justiciable controversy and is binding on any further adjudication between the parties as to the rights so declared. *Russell v. First York Sav. Co.*, 218 Neb. 112, 352 N.W.2d 871 (1984). Furthermore, this court has said: " 'In a declaratory judgment action on a contract, the court may not only construe the contract but it is authorized to enter judgment for the amount due thereunder in the light of the interpretation made.' " *Dixon v. O'Connor*, 180 Neb. 427, 433, 143 N.W.2d 364, 368 (1966); *Richardson v. Waterite Co.*, 169 Neb. 263, 99 N.W.2d 265 (1959).

In the case at bar the district court properly entered a

judgment for the amount of principal and interest due at the time of trial. See *Richardson, supra.* Although the trial court specifically found when and in what amounts the remaining payments were payable, no judgment was entered in that regard. Rather, the court said: "Plaintiff is granted a declaratory judgment that the defendant is obligated to pay to the plaintiff the sum of $17,182.02 in annual installments of principal and interest in accordance with the parties' contract."

This case is distinguishable from *First Nat. Bank v. Omaha Nat. Bank,* 191 Neb. 249, 214 N.W.2d 483 (1974), cited by the defendant. In *First Nat. Bank* the judgment ordered that certain unmatured installments of rent, taxes, and insurance were to be paid as they fell due, that the court would retain jurisdiction, and that the judgment " 'shall mature and become effective as to each unmatured installment . . . on the day after said installment or payments are due and execution may then issue . . . .' " *Id.* at 251, 214 N.W.2d at 485. We vacated that part of the judgment relating to future installments and the issuance of execution as to any unmatured installments of rent, taxes, and insurance. We stated, however: "The District Court clearly has power to retain jurisdiction and grant further relief where it has entered a declaratory judgment declaring the right of the parties under a contract." *Id.* at 252, 214 N.W.2d at 485. The specific findings concerning future amounts payable made in the case at bar were not determined from such indefinite and variable subject matter, nor was any provision made regarding the entry of judgment and the issuance of execution.

The last issue which must be determined is plaintiff's cross-appeal in which he contends that the district court erred in finding that the Nebraska Wage Payment and Collection Act, §§ 48-1228 et seq., was not applicable.

In *Rudolf v. Tombstone Pizza Corp.*, 214 Neb. 276, 281, 333 N.W.2d 673, 676 (1983), this court explained:

> Section 48-1231 of the act permits an "employee" to whom "wages" are owed to sue the "employer" for payment. By statutory definition an employee is "any individual permitted to work by an employer." An employer is anyone "employing any person as an

employee." The act applies if an individual in the employ of another has a right to "wages" as defined in the statute.

The trial court found that the act did not apply to the plaintiff's claim for termination compensation or past due commissions. In reviewing that finding it is first noted that § 48-1229(3) of the act provides: "(3) Wages shall mean compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis."

Although the defendant admitted in its answer that the plaintiff had earned commissions totaling $959.35, that amount had been paid into court pending resolution of the suit. The defendant recovered a judgment for $1,557.74 on its counterclaim, which alleged the plaintiff had breached the contract. Section 48-1230 of the act provides in part:

> An employer may deduct, withhold, or divert a portion of an employee's wages only when the employer is required to or may do so by state or federal law or by order of a court of competent jurisdiction *or the employer has a written agreement with the employee to deduct, withhold, or divert.*

In this regard article X of the agreement provided that "if either party shall be in default of or breach any of the terms or conditions of this contract," then:

> There is hereby granted to the defaulted party a contractual lien upon any sums due or owing to the other or which may be collected by the defaulted party and, subsequently, be due or owing to the other party to cover the items described in this Article. If said sum shall not be liquidated in amount, then and in that event the defaulted party is authorized to retain said sums until said claim, demand or cause of action shall be consummated.

In light of the provisions of the statute and the terms of the agreement, there was nothing due the plaintiff for past due commissions.

The termination compensation due the plaintiff under the agreement was not compensation for labor or services rendered

to the defendant, but was in the nature of a severance payment or liquidated damages which became due upon termination of the agreement. The finding of the district court that the act was not applicable was correct.

The judgment of the district court is affirmed.

AFFIRMED.