William R. CODY and C.D., Plaintiffs
and Appellants,

v.

Walter LEAPLEY and Greg Bartron,
Defendants and Appellees.

No. 17328.

Supreme Court of South Dakota.

Submitted on Briefs April 24, 1991.

Sept. 25, 1991.

Lee A. Tappe, Platte, for plaintiffs/appellants.

Mark Barnett, Atty. Gen., Pierre, Richard J. Helsper of Erickson, Helsper & O'Brien, Brookings, for defendants/appellees.

GILBERTSON, Circuit Judge.

## LEGAL ISSUES

### I.

WAS THE TRIAL COURT CLEARLY ERRONEOUS IN ITS DETERMINATION THAT PLAINTIFFS HAD FAILED TO PROVE THEIR OWNERSHIP OF CERTAIN PERSONAL PROPERTY DESIGNATED AS EXHIBITS ONE THROUGH TWENTY-FOUR?

### II.

DID THE TRIAL COURT ERROR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS AGAINST PLAINTIFFS' CLAIM FOR DAMAGES BASED ON ITS PRIOR DETERMINATION THAT THE PLAINTIFFS DID NOT ESTABLISH THEIR RIGHT TO POSSESSION OF CERTAIN PERSONAL PROPERTY?

## FACTS

The plaintiffs are husband and wife. Plaintiff William R. Cody (hereinafter Cody) is presently serving a life sentence in the South Dakota State Penitentiary for a conviction of a 1978 murder [1]. At all times pertinent to this case, he was an inmate in that institution. Mrs. Cody (hereinafter C.D.) is not so incarcerated. Defendant Leapley is the current warden of the state penitentiary and has been so employed since May 1, 1989. Defendant Bartron is the former president of the South Dakota Board of Charities and Corrections.

In 1986 Cody was granted trustee status at the penitentiary. This allowed him to live in the trustee facility outside the prison walls. He became active in certain community projects and was allowed access to an office and the use of a computer by the prison authorities.

About this time, Cody also embarked upon a program he characterized as one of personal improvement and rehabilitation. He began making tapes about relaxation and also about matters concerning sex. Cody testified that these later concerns dealt with sexual disfunction in certain women. His claimed goal through what he described as "sexual fantasy therapy," was to assist these women with various sexual problems.

On January 21, 1988, Clyde Hagen, then administrative assistant to the now retired Warden Solem, ordered Cody's trustee status revoked and Cody returned behind the prison walls. The basis for this revocation was Hagen's belief that Cody was planning an escape. After further investigation, prison officials also claimed Cody abused his trustee status by violating visitation rules which resulted in a nude photograph of C.D. being taken by Cody on prison grounds at the trustee cottage and subsequently sent to various individuals outside the penitentiary. Also, prison officials claim Cody was "abusing his mail privileges for the purpose of fraudulently obtaining pecuniary gain." After further investigation and a prison administrative

---

1. *See State v. Cody,* 293 N.W.2d 440 (S.D.1980); *State v. Cody,* 322 N.W.2d 11 (S.D.1982); *State v. Cody,* 323 N.W.2d 863 (S.D.1982); *Tappe v. Circuit Court,* 326 N.W.2d 892 (S.D.1982); *Cody v. Solem,* 755 F.2d 1323 (8th Cir.1985).

classification board hearing, the Defendants claim Hagen's actions were upheld by Warden Solem.

At the time of Cody's return into the prison, certain items in the trustee office were retained by prison officials. These items are the source of this litigation. They appear to be notebooks, computer disks, and various documents. The notebooks contain correspondence to and from persons identified as Charcot, Cody or Revere to various individuals throughout the country. Much of the content of these letters is of an explicit sexual nature. Cody claims these are his letters and replies received. Written transcripts of audio tapes described as "sexual arousal tape recordings" were also included in the seized material. He states that these letters and documents were part of his rehabilitation program which would be used in his effort to win a commutation.[2] Also contained in the items seized are numerous photographs. Many show naked females and males. Some also show individuals engaged in various sexual activities. Cody claims these photographs are his property which were also used in his rehabilitation program.

While in prison, Cody became married to C.D. She apparently visited him at the trustee facility and through furloughs Cody was granted. The Codys allege that the items seized contain intimate marital photographs of themselves. The Codys wish these photographs returned to them and maintain it would cause them embarrassment if the pictures were made public. They claim to already have suffered emotional distress upon learning that these photographs have been viewed by certain prison and state officials.

The defendants view the items seized and Cody's activities in a different light. They characterize the items seized as "porno-graphic materials" and accuse Cody of operating, under a fictitious name, a "repugnant 'commercial venture' whereby he (Cody) was distributing sexual fantasy tapes to individuals who had advertised in various pornographic magazines." The defendants found the material unnecessary to Cody's rehabilitation.

Cody and C.D. attempted informally to secure the property seized by the prison officials. These attempts were unsuccessful. Thereafter, Cody and C.D. filed a declaratory judgment action against the Defendants seeking return of the property and damages.

## PROCEDURE

After the plaintiffs filed suit, the defendants turned over the seized items still in their possession to the trial court pending a determination of the litigation. The defendants also filed repeated motions for summary judgment at various stages of the proceedings based on the doctrine of sovereign immunity and the notification requirements found in SDCL 3–21–2 and 3.

At a pretrial hearing, it was agreed that the trial was to be bifurcated. The initial part of the trial would be held to determine if the Codys could establish their ownership and right to possession of the property. The issue of any liability for damages would be reserved for a later date.

The first portion of the trial concerning ownership was held on April 10, and 11, 1990. At that proceeding, by stipulation of counsel, exhibits 25 through 40 were returned to the plaintiffs. However, plaintiffs reserved their right to seek damages for the purported wrongful seizure of these exhibits. Thus, the dispute over ownership was reduced to items that were marked exhibits 1–24.[3] At that time, plaintiffs testified generally concerning their claimed

---

2. In South Dakota life in prison is without parole. SDCL 22–6–1. Thus, the only method of release for a person serving such a sentence is to secure a pardon or a commutation from the Governor of South Dakota. *See* SDCL 24–14. If such clemency is received, the prisoner would then be eligible, at the appropriate time, for parole or in case of a pardon, an outright release.

3. When the box of documents was delivered to this Court, it did not contain what was apparently marked at trial as exhibit 10. From a review of the record, it appears it was removed for copying and apparently was never returned.

ownership of the seized documents and that the items were either necessary for Mr. Cody's rehabilitation or intimate personal papers and photographs. The defendants continued to argue that they were nothing more than pornography.

During the course of this trial, the plaintiffs and their attorney[4] made an intentional tactical decision not to introduce exhibits 1–24 into evidence. Their rationale was that if the documents were to become exhibits, and thus part of the trial record, the content would become public and defeat the Codys' goal of securing a totally confidential return of their personal property. Thus, the trial court never had a chance to view the items marked as exhibits 1–24.

Upon completion of the testimony, the trial court entered findings of fact and conclusions of law that the Codys had failed in their burden of proof to establish their ownership of this property.

After the trial court's ruling, the defendants again renewed their motion for summary judgment on the balance of the plaintiff's complaint based on the doctrine of sovereign immunity and the purported failure of plaintiffs to comply with the notification requirements of SDCL 3–21–2 and 3. The trial court granted that motion. This appeal followed.

### LEGAL ANALYSIS

### 1. SOVEREIGN IMMUNITY

a. *Sovereign immunity and the cause of action to recover possession of the property.*

■ Defendants initially argue that the plaintiffs' cause of action for possession of exhibits 1–24 is prohibited by sovereign immunity and therefore this Court is jurisdictionally barred from a review of the trial court's findings of fact and conclusions of law on this issue. "It is the rule in this state that jurisdiction must affirmatively appear from the record and this court is required *sua sponte* to take note of juris-

dictional deficiencies, whether presented by the parties or not." *State v. Phipps*, 406 N.W.2d 146, 148 (S.D.1987) *citing State v. Huftile*, 367 N.W.2d 193, 195 (S.D.1985) (emphasis original). Defendants note that they are sued in their representative capacity, rather than individually, and therefore the suit is actually against the State of South Dakota. *See High–Grade Oil v. Sommer*, 295 N.W.2d 736, 737 (S.D.1980).

The doctrine of sovereign immunity, as established by Article III, § 27, of the South Dakota Constitution, must not be viewed in isolation, but must be interpreted along with the balance of that document when a determination is made as to whether the plaintiffs are barred from pursuing their claim.

■ Plaintiffs' complaint alleges that the defendants wrongfully seized plaintiffs' property. Thus, Article VI, § 13 of the South Dakota Constitution may apply. It states, "Private property shall not be taken for public use, or damaged, without just compensation, which will be determined according to legal procedure established by the Legislature. . . ." While this provision has, in the past, been generally concerned with cases involving real property,[5] the article covers all "private property." Thus, it clearly also includes personal property. SDCL 43–1–3. *State ex rel. Grigsby v. Buechler*, 10 S.D. 156, 72 N.W. 114, 116 (1897); *S.D. Dept. of Health v. Owen*, 350 N.W.2d 48, 51–52 (S.D.1984).

Given the nature of the request for return of exhibits 1–24 contained in plaintiffs' complaint, a specific statute, SDCL 21–32–8, implements this constitutional protection.

In any and all actions to determine adverse claims to real or personal property, or involving possession of real or personal property, or to foreclose mortgages or other liens upon real or personal property, or to partition the same, the state of South Dakota may be sued and made defendant in the courts of this state.

---

4. Counsel who represents the Codys before this Court did not represent them at trial.

5. *Darnall v. State*, 79 S.D. 59, 108 N.W.2d 201 (1961); *Hurley v. State*, 82 S.D. 156, 143 N.W.2d 722 (1966); *City of Rapid City v. Boland*, 271 N.W.2d 60 (S.D.1978); *Boland v. City of Rapid City*, 315 N.W.2d 496 (S.D.1982).

██ This is not to imply that all takings or seizures by the state will result in compensation to the owner or return of the property. No return of the property nor compensation is allowed where the state establishes that its actions were done under its police power such as to abate a public nuisance. *Boland,* 271 N.W.2d at 66–8; *Boland,* 315 N.W.2d at 498–9; *Owen, supra* at 50–52; *Romey v. Landers,* 392 N.W.2d 415, 420–21 (S.D.1986). Where the legislature, in the implementation of its constitutional powers, provides for penalties, such as forfeitures, such action is not a taking of private property in a constitutional sense. It is not deemed to be an exercise of the power of eminent domain, where private property is taken for a public use. The property interest is rather invaded because the legislature has found it necessary in order to preserve the public welfare. "As such it represents a (legislative) exercise of a police power to which the constitutional requirement of compensation is inapplicable." *U.S. v. One 1962 Ford Thunderbird,* 232 F.Supp. 1019, 1022 (N.D.Ill.1964). *See also, Hamilton v. Kentucky Distilleries & W. Co.,* 251 U.S. 146, 156–7, 40 S.Ct. 106, 108–9, 64 L.Ed. 194 (1919)[6]; *U.S. v. One 1961 Cadillac Hardtop Automobile,* 207 F.Supp. 693, 699 (E.D.Tenn.1962).

The South Dakota Legislature has granted the warden substantial powers of confiscation in the operation of the penitentiary. SDCL 24–2–26 states:

> Any article or item which is not specifically authorized by law or by the warden and in the personal possession or effects of any inmate shall be confiscated and disposed of in the manner as in the opinion of the secretary of corrections will best promote the interest of the state. Unauthorized money which has been confiscated shall be deposited in the state general fund.

We further note that in general, a warden of a prison is allowed a wide range of discretion in executing policies that are designed to preserve order, discipline and prevent escape. *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447, 473 (1979); *Rogers v. Scurr,* 676 F.2d 1211, 1216 (8th Cir.1982); *Little v. Norris,* 787 F.2d 1241, 1244 (8th Cir.1986); *Spence v. Farrier,* 807 F.2d 753, 755 (8th Cir.1986).[7]

Absent the proper use of the police power by the warden pursuant to SDCL 24–2–26 and his lawfully exercised discretion, a wrongful seizure of property may have been inflicted upon the plaintiffs by the defendants. Retired Warden Solem, who was warden at the time of the alleged seizure, did not testify. Neither was Cody's prison file (the missing exhibit 10), nor other relevant prison records, introduced by defendants. Thus, the trial court was not provided with a factual basis to determine the legality of the actions taken in regard to the seizure of exhibits 1–40. Therefore, we cannot say as a matter of law that the seizure was within the warden's authority and thus a suit by the plaintiff to recover possession of exhibits 1–24 is jurisdictionally barred by the doctrine of sovereign immunity.

██ In the alternative, the defendants argue that the plaintiffs are statutorily prohibited from maintaining the action due to plaintiffs' failure to comply with the notification requirements of SDCL 3–21–2. That statute provides:

> No action for the recovery of *damages for personal injury, property damage, error or omission or death,* caused by a public entity or its employees may be

---

**6.** "They suggest that certain uses of property may be regarded as so undesirable that the owner surrenders his control at his peril. The law thus builds a secondary defense against a forbidden use and precludes evasions by dispensing with the necessity of judicial inquiry as to collusion between the wrongdoer and the alleged innocent owner. So here the legislature, to effect a purpose clearly within its power, has adopted a device consonant with recognized principles and therefore within the limits of due process." *Van Oster v. State of Kansas,* 272 U.S. 465, 467–8, 47 S.Ct. 133, 134, 71 L.Ed. 354, 358 (1926).

**7.** Of specific interest is the decision of *Carpenter v. State of South Dakota,* 536 F.2d 759 (8th Cir.1976) where the court held that an inmate could be prohibited by prison officials from receiving sexually explicit publications as they constituted a danger to rehabilitation.

maintained against the public entity or its employees unless written notice of the time, place and cause of the injury is given to the public entity as provided by this chapter within one hundred eighty days after the *injury*. (emphasis added).

■ Under SDCL 3-21-3, the officials designated to receive this notice are the attorney general and the commissioner of administration. Defendants maintain that an uncontradicted affidavit by the commissioner establishes no such notice was ever timely provided to that official. Our review of that document leads us to conclude that no such a claim was ever made by the commissioner. In fact, the entire record is silent on this point. Neither was there any attempt by defendants to show lack of required service upon the attorney general. Therefore defendants have not established plaintiffs' noncompliance with SDCL 3-21-3 as a matter of law.[8]

Thus, we conclude that sovereign immunity does not bar a suit for recovery of possession of the documents and the other items described as exhibits 1-24.

b. *Sovereign immunity and the cause of action for damages.*

As far as property damage, none of the items marked as exhibits 1-40 were physically damaged. However, Cody argues he could not apply for a commutation in 1988 and 1989 because his property right to possess his materials had been damaged through seizure by prison officials thus denying him the use of the property as a basis for establishing his claimed rehabilitation program as a therapist. In addition, Cody testified some returned items were diminished in value to him as they were interdependent upon other items that were not returned by the defendants. This Court and other jurisdictions have recognized that loss of use of property constitutes a damage to property. *Landeen v. Yonker*, 84 S.D. 600, 175 N.W.2d 50, 51

(1970); *Arcon Const. Co. v. S.D. Cement Plant*, 349 N.W.2d 407, 414 (S.D.1984); *Federated Mutual Ins. Co. v. Concrete Units*, 363 N.W.2d 751, 756-7 (Minn.1985); *Trio's Inc. v. Jones Sign Co.*, 151 Wis.2d 380, 444 N.W.2d 443 (1989).

It has been generally held that a court may award a money judgment or damages for consequential relief in a declaratory judgment action. *Heimbouch v. Victorio Ins. Serv.*, 220 Neb. 279, 369 N.W.2d 620 (1985); *F. Rosenberg Elevator Co. v. Goll*, 18 Wis.2d 355, 118 N.W.2d 858 (1963). This Court has recently held in *Keegan v. First Bank of Sioux Falls*, 470 N.W.2d 621, (S.D.1991), that whether a loss has been incurred is a question for the trier of fact.

Defendants argue that they were entitled to summary judgment on the issue of damages pursuant to SDCL 21-32-15, 16 and 17 based on the doctrine of sovereign immunity. Those statutes authorize a limited abrogation of sovereign immunity to the extent the state has purchased liability insurance to protect itself. The affidavit of Commissioner Stroup establishes that on the date of seizure, the state did not have any liability insurance in force.

■ We hold that SDCL 21-32-15, 16 and 17 do not apply to the facts of this case. In *Buechler* we held that where there exists a question of interpretation as to the effect of a statute, that construction is favored which would not result in the taking of the property of a private person without due process of law and just compensation. This is in accord with the literal wording of Article VI, § 13, of our Constitution which guarantees that "private property shall not be ... damaged without just compensation."

■ Defendants also rely on plaintiffs alleged noncompliance with the requirements of SDCL 3-21-3 as a basis for sum-

---

**8.** Even if defendants had adequately preserved their argument through what they claim to be an uncontradicted affidavit of the commissioner as to lack of notice, this would not entitle them to summary judgment on the plaintiffs' claim of wrongful seizure of plaintiffs' property.

SDCL 3-21-2 does not by its terms apply to a cause of action of this type. This claim is not for "recovery of damages for personal injury, property damages, error or omission or death...." Plaintiffs are seeking *recovery of property they claim is rightfully theirs to possess.*

mary judgment concerning the damages question. At the outset, it is clear that a claim for damages is within the scope of that statute. However, as has been noted, defendants failed to establish as a matter of uncontradicted fact that no notice had been given by the plaintiffs to the commissioner of administration.

Neither can the burden be shifted to the plaintiffs to prove compliance under a theory that SDCL 3–21–2 and 3 are jurisdictional and failure by the plaintiffs to affirmatively show compliance in the record, creates a fatal jurisdictional defect. *Cf. Phipps, supra.* Defendants point to our language in *Finck v. City of Tea,* 443 N.W.2d 632, 635 (S.D.1989) that compliance with this statute is "mandatory."

Although this Court has not had the occasion to examine SDCL 3–21–2 and 3 to determine if they are jurisdictional, one of their statutory predecessors, SDCL 9–24–2 (repealed July 1, 1986) has been so analyzed in the same context.[9] In *Gellenbeck v. City of Mobridge,* 40 S.D. 157, 166 N.W. 631 (1918) we held that where a statute of this type creates the cause of action, compliance is mandatory and failure to comply is a jurisdictional defect which may be raised at any state of the proceeding. However, if the cause of action is independent of the notice requirement, such as is the case herein in regard to a claim of wrongful seizure of one's property, the statute is found to be in the nature of a statute of limitation. *Gurney v. Rapid City,* 74 S.D. 194, 50 N.W.2d 360, 362 (1951). *See also Hanley v. Sioux Falls,* 49 S.D. 91, 206 N.W. 240 (1925). As such, under SDCL 15–6–8(c) it is in the nature of an affirmative defense and must not only be pled, but to be granted relief under SDCL 15–6–56, it must be established as a matter of uncontroverted fact.

Therefore we determine that defendants' claim of sovereign immunity is not a basis for dismissal of plaintiffs' claim for damages to exhibits 1–40 pursuant to defendants' motion for summary judgment.

Thus, resolution of the damage claim, like the issue of the legality of the seizure, proceeds to the plaintiffs' ability to convince the trial court plaintiffs' have a "property interest" in the exhibits. *Romey, supra.*

## 2. PLAINTIFFS' CLAIM OF OWNERSHIP OF EXHIBITS 1–24.

■ Plaintiffs' complaint alleges a wrongful seizure of their property by the defendants. In declaratory actions seeking recovery of property for alleged wrongful seizure, the burden of proof falls upon the plaintiff. *North Liberty Land Co. v. Inc. City of North Liberty,* 311 N.W.2d 101, 103 (Ia.1981); *Mullendore v. Nuernberger,* 230 Neb. 921, 434 N.W.2d 511, 515–516 (1989) (as to declaratory judgments generally); *Basin Elec. Power Coop. v. Payne,* 298 N.W.2d 385 (S.D.1980) (interpreting SDCL 21–35–10.1) and *Mabe v. State,* 86 Idaho 254, 385 P.2d 401, 406 (1963) (as to inverse condemnation). Thus, at the outset, plaintiffs must establish that they are the owners of the property. Without proof of ownership, plaintiffs' claim to right of possession crumbles. Likewise the claim for damages dies with the death of the claim of an illegal seizure.

■ A review of the trial transcript shows that the defendants defended their actions on the grounds that the plaintiffs had the burden of proof to establish to the trial court that plaintiffs were the owners of the property. At the pretrial hearing the following exchange took place between the trial court and plaintiff's counsel:

> THE COURT: Well, you are going to have to move—go forward with whatever evidence you have that you are entitled to possession of these items. I think they have to be identified in order for your to make any kind of sense out of that, Mr. [John] Wilka. [Plaintiff's attorney].
>
> MR. WILKA: That's true.

However, as previously noted, the plaintiffs and their attorney made a tactical

decision not to introduce exhibits 1–24 as they did not want them made public or even have the trial court view them.

The trial court held that the plaintiffs had failed to establish ownership of the property and thus denied plaintiffs their request to be given possession of the property.

> The nonproduction or suppression by a party of evidence which is within his power to produce and which is material to an issue in the case justifies the inference that it would be unfavorable to him if produced. The rule is of general application; and it may be invoked where real or demonstrative evidence is involved.

Jones on Evidence § 447 (5th ed. 1958). *See also* Jones on Evidence § 3:91 (6th ed. 1972); 29 Am.Jur.2d *Evidence* § 178–9 (1967); Annotation, 69 A.L.R.4th 906 (1989).

In analyzing the effect and scope of this presumption, it has been determined that where an adversary withholds evidence in his possession that he claims supports his version of the facts, "the strongest inferences may be drawn against him which the opposing evidence in the record permits." *Jarrett v. Madifari*, 67 A.D.2d 396, 415 N.Y.S.2d 644, 651 (1979), *citing Perlman v. Shanck*, 192 App.Div. 179, 182 N.Y.S. 767 (1920); *Milio v. Railway Motor Trucking Co.*, 257 App.Div. 640, 15 N.Y.S.2d 73 (1939); *Borman v. Henry Phipps Estates*, 260 App.Div. 657, 23 N.Y.S.2d 339 (1940).

The trial court clearly applied this rule in arriving at its decision. Codys argue that they have overcome this presumption as they maintain the defendants never denied the plaintiffs' claim of ownership. To the contrary, the defendants' answer places the issue of ownership in issue. Warden Leapley and Major Severson, both penitentiary officials, in pretrial affidavits stated that Cody "improperly possessed" the "items seized." [10]

At trial, the plaintiffs subpoenaed former Administrative Assistant Hagen, and current prison officials Colonel Rist [11] and Major Severson. However, plaintiffs never asked any of these officials to identify the items marked as exhibits 1–24. During the testimony of Hagen, Rist and Severson, counsel for the defendant objected no less than three times that the exhibits had not been offered. At one point the trial court stated "I think we should get to the exhibits and to determining what they are...." Thereafter Cody testified. Subsequently the trial court stated, "I'm not sure why it [Exhibit 10] was delivered to me but whatever the purpose, until it's introduced in evidence, I don't have any feeling about it." After this warning, C.D. also testified. Yet, neither William Cody nor C.D. attempted to identify, let alone offer into evidence, the disputed items. Finally, plaintiffs never attempted to subpoena either defendant or the now retired Warden Solem to testify on this crucial point.

The fact that William Cody's name appears on numerous documents is not dispositive as to the issue of ownership. Obviously, the prison maintains files on its inmates, including Cody, and the fact that a prisoner's name appears thereon in no way establishes or transfers ownership of the document to that individual merely because of that fact. During the trial, the defendants claimed that exhibit 10, which is now missing from the court file, was such a

---

10. It cannot be blindly assumed that the "items seized" must include exhibits 1–24. After the original seizure, numerous documents described by Clyde Hagen as "several car loads of property" were returned to C.D.

On the day of trial, prior to testimony, exhibits 25–40 were identified in the record and returned to the plaintiffs by defendants.

Thus, we are left with a box containing items marked as exhibits 1–24. Neither we, nor the trial court, can determine by telepathy, osmosis or any other method the essential preliminary matters such as proper identification, let alone reaching the ultimate issue of actual ownership.

There certainly is no chain of evidence to show that these "exhibits" are a portion of the "items seized" from Cody.

11. Plaintiffs' argument that Colonel Rist's description, of Hagen's handling of the matter, as "plain ass stupid," as constituting proof of Codys' ownership, is incorrect. Colonel Rist also testified that "I guess I was not aware what all the property was because I never seen it." Thus, whatever Rist's opinion of Hagen's conduct may be, it clearly does not constitute proof exhibits 1–24 were owned by the Codys.

prison file on Cody. Cody bolstered this point by testifying that part of the missing material was Hagen's prison file on Cody.

Likewise, the numerous statements of plaintiffs' counsel throughout the proceeding concerning plaintiffs' claim to ownership of the items are not evidence, as counsel could not give admissible testimony and remain as a participating attorney. *Estes v. Millea,* 464 N.W.2d 616, 619 (S.D.1990). Oratory and arguments of counsel, however eloquent, are not a evidentiary basis to avoid an unfavorable disposition of the case. *Id.*

Plaintiffs had no right to require the trial court to accept their claims of ownership based on blind faith. Since they sought the Court's equitable assistance in gaining possession of the items, they were not correct in intentionally withholding the most crucial evidence from the court.[12]

The Codys' justification for refusing to offer the property marked as exhibits 1–24, based on their desire to protect their privacy as to the content of the documents, is irrelevant to overcoming their burden of proof to establish their ownership of the documents and their right to possession. This self-professed modesty by the Codys as a basis for withholding the exhibits from the trial court is further surprising in light of the fact that both Cody and C.D. admitted on the stand that the Codys provided copies of their personal nude photographs to third persons while Cody was still a trustee.

Thus, the trial court's decision as to the ownership of exhibits 1–24 is not clearly erroneous. *In re J.J.* 454 N.W.2d 317

(S.D.1990). As such, the Codys' claim to damages for wrongful seizure as to these items was also properly dismissed.

By the stipulated return of exhibits 25–40 prior to trial, defendants obviously admitted that they had retained possession of this property which the plaintiffs owned and previously possessed. Further proceedings are required to address plaintiffs' claim of damages for purported improper taking of exhibits 25–40 by defendants.

## CONCLUSION

William Cody has sought to portray himself as an imprisoned man seeking to rehabilitate himself in the vein of a modern day O. Henry. To decide this appeal, it is not necessary for us to sit as some sort of a censorship or literary review board analyzing the mass of documents before us and comparing them to "The Ransom of Red Chief" or "The Gift of the Magi."

For the reasons set forth above we hold that the trial court was not clearly erroneous in concluding that plaintiffs had failed to prove ownership of exhibits 1–24 and thus the right to possession and damages. The documents marked exhibits 1–24 are to be returned to Warden Leapley.

The issue of damages as to exhibits 25–40 is reversed and remanded to the trial court for further proceedings in accordance with this opinion.

WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

---

**12.** As a collateral matter, the failure to introduce the "exhibits" causes additional administrative problems. Because they were never offered nor admitted, no index was prepared by the clerk of courts for processing the appeal which would have been ordinarily done pursuant to SDCL 15–26A–53. Given the great amount of material contained in these "exhibits," countless judicial hours were needlessly spent in attempting to locate and identify various documents.

Had the trial court and its clerk followed to the letter, the requirements of SDCL 15–15–3, the personal property would have been returned to the defendants rather than being part of the appeal record. That statute declares that all

exhibits "offered" at trial "shall be filed as records in said cause."

Thus, we like the trial court, would have also been in the position of having to determine ownership of the documents as well as whether they were obscene and/or used in a fraudulent scheme, in an evidentiary vacuum without being able to view them. Such appellate gymnastics is not possible and is a squander of judicial time and resources.

An appellate court must look at the context and the content of the material in such cases. *Carpenter, supra* at 764 *citing Kois v. Wisconsin,* 408 U.S. 229, 231, 92 S.Ct. 2245, 2246, 33 L.Ed.2d 312, 315 (1972).

SABERS, J., dissents.

GILBERTSON, Circuit Judge, for MILLER, C.J., disqualified.

HENDERSON, Justice (concurring in part, dissenting in part).

As a matter of settled law, Cody is not entitled to a trial. Honorable Robert Heege, Circuit Judge, properly entered a summary judgment at the trial court level.

I concur to the extent that the documents marked Exhibits 1–24 are to be returned to the Warden. I dissent to granting Cody a trial on the issue of damages concerning Exhibits 25–40. I would affirm Judge Heege's decision in its entirety.

Cody is a convicted murderer. Stemming from his conviction, Cody has now plagued the courts and been a burden upon the South Dakota taxpayers for well over a decade. He now seeks to sue the State of South Dakota because, as a trustee, returned to the confines of the Penitentiary walls, he claims he has been damaged due to the deprivation of seized personal property. This seized (or confiscated) property consists, inter alia, of a pornographic photograph of his wife, C.D., which he apparently distributed for profit, outside of the Penitentiary walls, but which he took of his wife while he was on trustee status. Cody, while on trustee status, unbeknownst to the Penitentiary officials, operated a commercial enterprise. This consisted of distributing sexual fantasy tapes for profit to those engaged in distributing same, Cody using a pseudonym to cover up his activities. Cody's trustee status was revoked upon the basis that he abused his mail privileges by establishing a commercial enterprise by producing tape recordings in the areas of pain management, chemotherapy, anorexia/bulimia, alcohol/drug abuse and speech anxiety. In effect, Cody set up a business for profit while he was serving a life sentence for murder.

It is axiomatic that our state prison officials, more particularly the Warden who delegates authority, has a responsibility to preserve order and discipline in the State Penitentiary. Cody, unbelievably, maintains that by engaging in these nefarious acts, he was deeply involving himself in a self-help rehabilitation program. Under SDCL 24-2-1 and 6, the Warden had the right to confiscate the above-described materials. These materials are not authorized by law for any convict to have in his possession. On this point of law, based upon public policy and the safety of the citizens of this state, Cody is not entitled to a trial. Running a prison does not include any inmate setting up a shop to sell or distribute for profit sexually explicit materials, or for that matter, establishing *any* kind of business. It only makes common sense that prison officials can reasonably limit a prisoner's activities when it is necessary to maintain discipline, security, and order within the penal institution. Cody's right to possess personal property is, simply put, limited by reason of his confinement. *McCrae v. Hankins*, 720 F.2d 863 (5th Cir. 1983). In *Johnson v. Galli*, 596 F.Supp. 135, 139 (D.Nevada 1984), the district court cited *McCrae* approvingly, stating: "Jail officials' need to maintain security and order allows reasonable restrictions on the property rights of those who are confined there." The District Court also cited a 5th Circuit case holding this same proposition, *Sullivan v. Ford*, 609 F.2d 197, 198 (5th Cir.1980). As Cody had no right whatsoever to the personal property in question, he has no right to sue for damages. South Dakota has no liability to Cody.

The weakness of Cody's lawsuit is only matched by his audacity in bringing it, once again consuming valuable judicial resources.

SABERS, Justice (dissenting).

I would reverse on the question of whether summary judgment was proper because a genuine issue of material fact exists as to Cody's ownership of these items of personal property. The defendants failed to show that there are no genuine issues of material fact, contrary to *McKinney v. Pioneer Life Ins. Co.*, 465 N.W.2d 192, 193–194 (S.D.1991), and *State Dept. of Rev. v. Thiewes*, 448 N.W.2d 1, 2 (S.D.1989). Therefore, summary judgment was improper. *Groseth Int'l, Inc. v. Ten-*

*neco, Inc.*, 410 N.W.2d 159, 172 (S.D.1987); *Bego v. Gordon*, 407 N.W.2d 801, 812 (S.D.1987).

It would even seem that plaintiff's ownership was sufficiently established to withstand a motion for directed verdict if this were in fact a hearing or a trial instead of summary judgment as claimed.